## JAQUI *vs.* JOHNSON.

1. If the parties to a grant have used clear and appropriate language, and their meaning is plain, the duty of the court is simply to enforce the expressed intention. But if the language is uncertain, and susceptible of having different meanings put upon it, then regard must be had to the general object of the grant, its subject matter, and the situation of the parties; every clause and provision must be searched, and, if possible, effect given to each. If the intention can thus be clearly gathered, it must prevail, and be carried into effect.

2. Under a grant of the right to take water from a pond of the grantor to another, conveyed by the grant, "as now carried in the trunk or feeder that carries the water from said pond to the grist mill;" the grantee "to have the right, at all times, to enter upon the lands of the grantor adjoining said trunk or feeder, to alter, repair, or renew the same at his convenience," the grantee has not only the right to change the form, material, and size of the trunk, but its location, so far as may be necessary to give him the full benefit of the grant.

3. The thing granted is an artificial water-course, consisting of structure and location, and right of alteration gives the grantee the right to change both location and structure.

4. The modern rule is not that the words of a deed must, in all cases, be taken most strongly against the grantor; but they are to be understood in a just and fair sense, and the whole instrument is to be considered in ascertaining the meaning of the parties. But, if the grantor has used language reasonably and fairly susceptible of two different interpretations, one more favorable to the grantee than the other, that must be adopted as the true exposition of the grant which is the more favorable to the grantee.

On final hearing, on bill, answer, and proofs.

*Mr. Vanatta,* Attorney-General, for complainant.

*Mr. Pitney,* for defendant.

THE VICE-CHANCELLOR.

This is the second contest between these parties, in this court, respecting the construction of a grant of an artificial water-course, made by the father of the defendant to the complainant and one Nehemiah H. Johnson, a brother of the defendant. The first was decided by Vice-Chancellor Dodd, and is reported under the title of *Johnson* v. *Jaqui,* 10 *C. E. Green* 410. The opinion, in that case, contains a clear, concise statement, showing the situation and relation of the dominant and servient estates at the time the grant was made, which is now in dispute. It is in these words :

"In January, 1864, Charles Johnson was the owner of two tracts of land in the county of Morris, on each of which were a mill pond, mill, and appurtenances. The tracts were separated from each other by a public highway, and differed considerably in their respective elevations ; that on which a grist mill and pond were located, being much lower than the tract whereon were a saw mill, cider mill, and pond. The difference between the ordinary levels of the two ponds, was from nine to ten feet. The water of the upper, or saw mill pond, was not used exclusively for the saw mill or cider mill, but, to some extent, was used to add to the water of the lower pond, on the opposite side of the road. The water was carried from the upper to the lower pond through a wooden feeder or trunk, not more than a foot square, extending several hundred feet in a circuitous course, placed partly on piers, partly on the surface of the ground, and partly under it; running first across the homestead lot of Johnson to the highway, or near it ; then along the highway, and then under it, and emptying into the pond of the grist mill."

On the 18th of January, 1864, Charles Johnson conveyed

to the complainant and his son Nehemiah, the grist mill lot, containing one and a-quarter acres, describing it as his grist mill, or grain and flouring mill, situate on his homestead farm. The deed, in express terms, granted, in addition to the land described, the pond, dam, tail race, and all the privileges heretofore had and used in connection with and for the purposes of the grist mill; the right to raise the dam of the grist mill three feet above its height at that time, and to flow any lands of the grantor above the dam, in consequence of the addition to its height; to enter upon the grantor's land at any time, to fix, improve, and repair the dam and pond; to dig out the tail race of the grist mill, on lands of the grantor, at any time, to any depth; and the right o renew, re-build, and maintain the saw mill dam at its height at that time, and to take from the lands of the grantor adjoining the pond, any stones, gravel, and earth necessary, in the judgment of the grantees, to keep it in good repair. Immediately preceding the one last recited, giving the right to maintain the saw mill dam, is the grant now in controversy. It is expressed in these words : " Also to have the water from the old saw mill pond of said Charles Johnson, in the rear of his dwelling, as now carried in the trunk or feeder that carries the water from said pond to the grist mill pond above the dam, excepting only so much of said water as said Charles Johnson, his heirs or assigns, shall want for grinding apples at his cider mill, near the old saw mill; and to have the privilege, at all times, to enter upon all, or any of the lands of said Charles Johnson, along and adjoining said trunk or feeder, to alter, repair, or renew the same at their convenience."

By subsequent conveyances, the complainant is now vested with all the rights granted by the deed of January 18th, 1864, and the defendant, under the provisions of his father's will, has a life estate in the lands made servient to the grist mill property by that deed.

The trunk or feeder in use at the date of the grant, was constructed of plank. From the saw mill pond, for a distance of about eighty feet, it was three feet deep, two feet wide, and

open on the top; at the point last named, it was intersected by a trunk eight and a-half inches deep, ten and a-half inches wide, external measurement, covered on the top, extending from the larger trunk to the grist mill pond. It continued in use from the date of the grant until 1867 or 1868, when, in consequence of decay, it became useless.

In the summer of 1866, the complainant, under notice from the defendant, at his own cost, rebuilt a part of the saw mill dam, and repaired the whole of it.

In 1868 or 1869, the defendant, in making the excavation for the foundation of an addition to his cider press house, tore up and removed a part of the smaller trunk, and built the addition over where it had laid.

In 1869, the highway running between the dominant and servient estates, was widened by the surveyors of the highway, upon the application of the complainant, defendant, and other freeholders, so as to bring within its lines that part of the trunk which, before the alteration, had laid along it.

In 1871–72, the complainant deepened the tail race of the grist mill, and built a new grist mill on the grist mill lot, and he alleges, believing he had a right to use the water of the saw mill pond in running his grist mill, it was constructed with a view of using the water of that pond in its operation.

In this condition of affairs, on the 28th of September, 1874, the complainant gave the defendant written notice he intended to construct a new trunk of two inch wooden staves, cylindrical in form, hooped with iron bands, about twenty inches in internal diameter, with a suitable device to supply the cider mill with water, according to the terms of the grant, and to locate it substantially on the route of the old trunk, except where departures were rendered necessary by the addition to the press-house, and the alteration in the width of the highway. The notice requested the defendant, if he had any objections to make to the work, to state them promptly. By notice, dated October 1st, 1874, the defendant replied, he was then engaged in grinding apples, rendering the use of the

water of the saw mill pond, the way to the cider mill, and the grounds about it, necessary, to him daily, and requiring the complainant to refrain from any disturbance of his business, by the construction of the new trunk, until the season for grinding apples was over. He denied the complainant's right to ask him to indicate what rights the grant conferred, and notified him he must act at his peril. He also denied the complainant's right to depart from the route of the old trunk in locating the new, and insisted that the carrying capacity of the new was much greater than the grant authorized, or was necessary to carry the water by a steady, continuous flow, and that a conduit ten inches in diameter was as large as the complainant had a right to use.

The complainant refrained from doing anything on the lands of the defendant, until after he had finished grinding apples. He then sent his workman there for the purpose of doing the work specified in his notice, and the defendant, by threats of violence and force, so intimidated them that they abandoned the work and refused to return. The defendant frankly avows in his answer, he has made it, and intends to make it, difficult for the complainant to put down a new trunk on his premises, of the size and in the place stated in the notice. There can, therefore, be no doubt this is a proper case for this court to exercise its prohibitory power against the defendant, in enjoining him from a further forcible interruption of this work, if the rights attempted to be exercised by the complainant, on the defendant's lands, were clearly granted by the deed of 1864.

The chief thing to be done in the construction of a grant, is to find out what the parties meant by the words they have used to express their intention. If they have used clear and appropriate language, there is no room for construction, their meaning is plain, and the duty of the court is simply to enforce the expressed intention; but if the language is uncertain—susceptible of having different meanings put upon it—then regard must be had to the general object of the grant,

its subject matter, and the situation of the parties ; every clause and provision must be searched, and, if possible, effect given to each. If, viewing it in this way, the intention can be clearly seen, it must prevail over everything, and be carried into effect.

I think, in this case, it is obvious, from the extraordinarily liberal provisions of the deed, that the grantor designed to confer upon the grantees every right and privilege reasonably essential to the most beneficial enjoyment of the grist mill lot. The right of flowing, and of entering on the grantor's land, to fix, improve, and repair the dam and pond, to deepen the tail race to any depth, and to take any stones, earth, or gravel from the grantor's land, necessary, in the judgment of the grantees, to keep the saw mill dam in repair, so completely render the servient estate a mere tributary to the grist mill property, so far as it can be contributory to it, that there would seem to be but little distinction, practically, between the grant made and a grant of the fee.

The principal difficulty in settling what is the true construction of this grant, grows out of the fact that the right to take the water from the saw mill pond to the grist mill pond may be understood to be limited or restricted by the words, " as now carried in the trunk, or feeder, that carries the water from said pond to the grist mill pond, above the dam." Now, were they used to mark out an unalterable line for the water course, or to limit, inflexibly, the carrying capacity of the conduit to be used to transfer the water, or to do both ? They must be construed in connection with the clearly granted right of entry on all lands of the grantor, adjoining the trunk, to repair, renew, and alter it.

The defendant insists the right of alteration must be limited exclusively to the structure, authorizing a change in its form, material and size, but not in its location. His construction is, the route is unalterably fixed by the words just quoted, from which there can be no departure. He also insists, if the size of the aperture is increased, it cannot lawfully be made greater than will be sufficient to transfer to the grist mill

pond the daily supply to the saw mill pond, from the stream which feeds it. This construction, in my judgment, unwarrantably curtails the natural force of the terms employed, and leaves them shorn of half their significance. One of the substantial things, clearly granted, is an artificial water course. It consists of structure and location. A place for the structure to rest on is absolutely necessary to its beneficial use; indeed, it cannot exist without it. Its location is as obviously an indispensable part of it as the foundation is a part of the house. Now, a right to change the trunk must, according to the most rigid interpretation, embrace both location and structure. The word "alter" is used generally, and in its largest sense, conferring, either according to a literal or substantive interpretation of it, a right to change form, material, size and location. To say it merely authorizes a change in form, material and size, and not location, would be an arbitrary limitation of its significance. That, the court has no right to do; the words are to be understood in their full, ordinary sense. Even if there was a doubt here, it could not help the defendant. The modern rule is not that the words of a deed must, in all cases, be taken most strongly against the grantor, but they are to be understood in a just and fair sense, and the whole instrument is to be considered in ascertaining the meaning of the parties; but if the grantor has used language reasonably and fairly susceptible of two different interpretations, one more favorable to the grantee than the other, that must be adopted as the true exposition of the grant, which is most favorable to the grantee. 2 *Kent's Com.* 732; *Broom's Maxims* 597, 598; *Ashley* v. *Pease,* 18 *Pick.* 275; *Cocheco Man'f'g Co.* v. *Whittier,* 10 *New Hamp.* 311.

It was insisted on the argument, that no departure from the line of the old trunk could be permitted in the location of the new one, because the rule of law is firmly established, that where a right of way, or an artificial water course, is granted, and its route or line is once defined by the act of one party and the acquiescence of the other, it cannot be altered in the slightest degree by either party, without the consent of

the other. The existence of this rule cannot be questioned. *Jennison* v. *Walker*, 11 *Gray* 426 ; *Wynkoop* v. *Burger*, 12 *Johns.* 222 ; *Bannon* v. *Angier*, 2 *Allen* 128 ; *Pearson* v. *Spencer*, 1 *Best & Smith* 584. Its wisdom is obvious. If the owner of an easement could change its position at his pleasure, the servient estate would be subject to his unrestrained control. So serious a burden cannot be created by anything short of an express grant. But this rule has no application to the case in hand. Here the grantor has conferred the right by clear words. In the cases referred to, there was simply a grant of a right of way, or of an artificial water course, without authority to make any changes ; but, in the case under consideration, the grantor has expressly granted a right to alter, without restriction or limitation, and he must abide by the terms of his deed. The distinction between the cases is manifest.

How far the erection of the addition to the cider house over the old trunk, and the alteration in the width of the highway, so as to bring the route of the old trunk within its line, would, in the absence of express authority, justify a departure from the route of the old trunk, it is unnecessary to consider ; for, in my opinion, the proposed location of the new trunk is authorized by the terms of the grant.

I do not think the claim of the defendant, that the carrying capacity of the new trunk cannot be made greater than will be sufficient to transfer to the grist mill pond the daily supply to the saw mill pond, can be maintained. The water of the saw mill pond is expressly granted, with the right to maintain its dam. The only reservation made by the grantor is the right to take so much water as shall be necessary to operate his cider mill for grinding apples. Under the maxim, *expressio unius est exclusio alterius,* everything not expressly reserved, passed to the grantees. The right to maintain the dam, unquestionably gives the right of storage, but for what purpose? The grantor cannot use it except during a single season each year, and for a single purpose. The parties did not mean the water should be stored simply

to be wasted.   The dam was to be maintained that the water might be used.   I think the grant of the right to maintain this dam, with the liberty to take the necessary materials from the lands of the grantor to keep it in repair, clearly shows it was the intention of the grantor to grant to the grantees the full benefit of the water of the saw mill pond, as an augmentation of the water of the lower pond, subject only to the right clearly reserved, and to give them the right to take it, not by a steady, continuous flow, but at such time and in such quantity as the condition of the water in the lower pond and the demands of their business rendered most advantageous to them.   It is said a trunk of the capacity of the one the complainant proposes to construct, will enable him to drain the upper pond in twenty-four hours at any time. Suppose it will; what of it?   The water is his; why shall he not be permitted to take it in such quantities and at such times as will be most beneficial to him?   The defendant's right to it is limited to the power necessary to operate his cider mill for grinding apples.   He cannot withhold it for any other purpose.   To hold he can retain, or keep it for any other purpose, or prevent the complainant from taking it, will be an enlargement of the right reserved, and in my judgment, a palpable invasion of the complainant's right.

The right to alter the location of the conduit does not give the complainant a roving license to locate it anywhere, in utter disregard of the convenience and interests of the defendant, nor to make it so large as to wantonly or unnecessarily encumber his lands or interfere with the use and enjoyment of his property.   His rights, in this respect, must be fairly exercised, so as to give him the full benefit of them, with the slightest injury to the defendant.

My conclusion is, the complainant has a right to construct a conduit of the size, form, and material specified in his notice of September 24th, 1874, and to locate it on the route described in that notice; and the defendant should be enjoined from all molestation of the complainant while engaged in the work of constructing and locating it.   I will advise a decree accordingly.