The petition in this cause is filed by the administrator cumtestamento annexo of the estate of Jacob Vanatta, deceased, and prays for a determination of the proper distributees of the funds of the estate in the hands of the administrator. This involves a construction of the will of Jacob Vanatta, and a contest between the representatives of the residuary legatees and those of his widow with respect to the funds in the hands of the administrator.
Jacob Vanatta died April 20th, 1879, leaving a will, which was duly probated in this court on June 5th, 1879, and of which Alfred Mills was appointed executor. Other provisions of the will pertinent to this inquiry are as follows:
"I give and bequeath to my dear wife, Julia, all of the goods and chattels in and about my dwelling-house and in and about my stable, including horses, harness, carriages, cows and all chattels, but any law books that may be at my house are not included in this bequest.
"All the remainder and residue of my property of every kind I give, devise and bequeath to my executor in trust for the uses and purposes hereinafter expressed, namely — *Page 341 
"`1. Out of the income of my estate, during the lifetime of my wife, to pay to my sister, Martha, every six months, from the day of my death, the sum of one hundred and twenty-five dollars, and, after the death of my wife, if sister Martha shall survive her, the sum of two hundred and fifty dollars every six months, so long as sister Martha shall live.
"`2. To permit my sister Martha to use, occupy and enjoy, during her natural life, free of rent, my house and lot at Hackettstown, New Jersey, in which she now resides, to pay the taxes assessed on said house and lot and to keep the buildings and fences in reasonable repair without charge to Martha, and at her death to sell and convey said house and lot and make the proceeds thereof a part of my general estate. If at any time during the lifetime of Martha, she shall in writing request my executor to sell and convey said house and lot, he may, if he shall deem it expedient and judicious so to do, sell and convey the same and securely invest the same and pay to sister Martha the net income thereof during her natural life.
"`3. After the payment, or rather subject to the payment of my debts, to transfer to my dear wife, Julia, the equal one-half of all my property, if she shall in writing, in her lifetime, request and direct my executor to make such transfer to her. Her half to be the half of what is left after payment of my debts. The gifts to my wife, hereinbefore given, to be treated as a portion of her half, and what is hereinbefore provided for sister Martha to be treated as a portion of the other half.
"`4. During the lifetime of my wife, after paying my debts and fulfilling the foregoing requirements as to sister Martha, to pay to my wife the whole residue of the income of my estate.
"`5. To sell, whenever my wife and my executor shall deem advantageous, any and all of my real estate, except the Hackettstown lot hereinbefore mentioned, and, at wife's death, to sell all then unsold.
"`6. After the death of my wife, if my brother Joshua be living at her death, to expend in such way as my executor shall deem most beneficial to my said brother, two hundred and fifty dollars a year for and towards his support during his natural life.
"`7. Subject to the provisions hereinbefore made, the remainder and residue of my estate shall be divided into three equal shares. One of those shares to be paid to my brother Henry if he be living, and, if he be dead, to be equally divided among his children as if he had been the owner thereof at his death. One of those shares to be paid to my sister Ellen, the wife of Levi B. Gibbs, if she be then living, and, if she be dead, to be equally divided among her children as if she had been the owner thereof at her death. The other one of those shares to be paid to each of the children of my sister Mary Werts, deceased, as shall be living at the time of my death, to be equally divided between them, and if any of them shall die after my death, and before the time for distribution and payment shall arrive, then the share of the one so dying shall be disposed of as if he or she had been the owner thereof at the time of his or her death.'" *Page 342 
Pursuant to the provisions of numbered paragraph "3" of said will, on July 2d 1879, the executor and Julia M.D. Vanatta, the widow of the testator, executed and acknowledged a written instrument which, on August 24th, 1881, was recorded as a deed in the Morris county clerk's office in book Q 10 of deeds, pages 25,c. A copy of this instrument is as follows:
"Whereas, Jacob Vanatta, of Morristown, New Jersey, deceased, in and by his last will and testament, bearing date the first day of June, in the year eighteen hundred and seventy-one, and proved before the ordinary of the State of New Jersey on the fifth day of June, eighteen hundred and seventy-nine, did give and bequeath to his wife, Julia, all of the goods and chattels in and about his dwelling-house and in and about his stable, including horses, harness, carriages, cow and all chattels, except his law books.
"And did thereafter give, devise and bequeath to Alfred Mills, the executor of said last will, all the remainder and residue of his property of every kind in trust for the uses and purposes in said will thereinafter expressed, and in the recital of said trusts did direct and provide as follows:
"`After the payment, or, rather, subject to the payment of my debts, to transfer to my dear wife, Julia, the equal one-half of all my property, if she shall in writing in her lifetime request and direct my executor to make such transfer to her her half, to be the half of what is left after payment of my debts. The gifts to my wife hereinbefore given to be treated as a portion of her half and what is hereinbefore provided for sister Martha to be treated as a portion of the other half.
"`And whereas, an inventory of the personal property of the said Jacob Vanatta, made by John E. Taylor and Augustus C. Canfield, has this day been duly proved before the ordinary of the State of New Jersey.
"`And whereas, the said Julia has in writing requested and directed, and does now request and direct, the said executor to transfer to her the equal of one-half of all the property of her late husband, the said Jacob Vanatta, subject to the payment of his debts in accordance with the terms of said trust and with the provisions of said will.
"`Now, therefore, the said Alfred Mills, executor as aforesaid, in pursuance of said request and direction of the said Julia, and in pursuance of the power conferred on him by the provisions of said will, and in consideration of one dollar to him paid by said Julia, does grant, bargain, sell, transfer and convey to the said Julia M.D. Vanatta the undivided half of said property, subject to the payments of the debts of said deceased as fully as he is empowered to do so under the terms of said last will, to have and to hold unto the said Julia M.D. Vanatta, her heirs, executors, administrators and assigns. And the said Julia has made, and now makes, in the said *Page 343 
Alfred Mills, executor as aforesaid, her written request and direction for such transfer as appears by her signature to these presents.
"`In witness whereof, the said Alfred Mills, executor as aforesaid, and the said Julia M.D. Vanatta, have hereunto set their hands and seals this second day of July, A.D. eighteen hundred and seventy-nine.
 "`ALFRED MILLS, [L.S.] "`Executor, c.
"`JULIA M.D. VANATTA. [L.S.]
 "`Signed, sealed and delivered in the presence of "`WILLIAM E. CHURCH.'"
An inventory of the personal property of the testator was made and filed in this court and, apparently, the widow received from the executor one-half of all of the property of the testator, after the payment of debts, which had been reduced to the possession of the executor or was considered of any value. The widow, Julia M.D. Vanatta, died July 26th, 1881, leaving a last will in which she appointed the said Alfred Mills her executor, and which will was duly probated before the surrogate of the county of Morris on August 24th, 1881.
Subsequent to the settlement of the accounts of the executor of the estate of Jacob Vanatta it was discovered that fifty shares of stock of the Lehigh and Wilkes-Barre Coal Company, of the par value of $2,500, stood in the name of the testator on the books of that company at the time of his death. (There seems to be some confusion as to the number of shares of this stock. The petition refers to it as fifty shares, one of the briefs as "fifty shares of the par value of $5,500," another as "twenty-five shares of the par value of $100 per share," another as "twenty-five shares of stock," and the account of the petitioner shows a sale of "one hundred shares of common stock and fifty shares of preferred stock." The inventory is not before me, but it is apparent that the administrator received $30,407.42 from the sale of the stock, whatever the amount may have been.)
It appears that at the time of the death of the testator this stock was practically valueless. It was not inventoried, whether because it was considered worthless or because the *Page 344 
executor did not have knowledge of it does not appear; nor, in the view I take of this case, does it matter. Subsequent to the discovery of this stock, Frank L. Cooke was appointed administrator cum testamento annexo of the estate of Jacob Vanatta, deceased, and as such he has, under the direction of this court, sold the stock for the amount above stated.
The representatives of the residuary legatees under the will of Julia M.D. Vanatta claim a half interest in the proceeds of the sale of that stock, basing their claim upon numbered paragraph "3" of the will, and the instrument executed by the executor and the widow, copy of which appears above.
On the other hand, the representatives of the residuary legatees under the will of Jacob Vanatta claim the entire proceeds of such sale, and assert that Julia M.D. Vanatta never acquired any interest whatever in the stock — first, because, as they claim, the instrument above quoted and which was recorded as a deed purports to convey and transfer to the widow only a one-half interest in the property which was mentioned in the inventory; and second, that whatever rights the widow obtained in the property of the testator was pursuant to a "power" given her in the will; that such "power" was not properly or sufficiently executed, and that even if it were properly and sufficiently executed it would be effective only as to the assets of the testator which were reduced to the possession of the executor in the lifetime of the widow, and that the power cannot be exercised by anyone after her death; that, therefore, the stock not having been discovered or reduced to possession by the executor in the lifetime of the widow, falls into and becomes a part of the residuary estate.
Proctors for the claimant Mary Werts Perkins have filed with the court a voluminous brief in which the subject of powers is ably treated; but this brief seems to have been based upon a misconception of the rights of the widow under the will, and without making a proper distinction between a "power" and an "election." In my judgment, the right given to the widow under the will is not a power but a right *Page 345 
to elect between two alternative provisions of the will. The will provides — first, that the widow is to take, absolutely, certain chattels mentioned in the second paragraph thereof, together with the income on the whole residue of the estate, subject to certain deductions as provided in numbered paragraph "4;" or, second, the provisions of numbered paragraph "3" of said will, together with the provisions of numbered paragraph "4." Obviously, the second provision was the more liberal, but the widow had the right, under the will, to choose which of the two provisions she would take, notwithstanding the fact that the second may have, in fact, included practically all she would have received under the first. Clearly, the provisions of this will for the widow are in the alternative, with a right of election in her.
The primary meaning of the word "election" is choice; the act of choosing. 3 Words Phr. (1st series) 2330, and cases therein cited. The ordinary meaning of "elect" is to choose between two alternatives. 2 Words Phr. (2d series) 228, and cases therein cited. An "election" is the choice between two or more courses of action, rights or things by one who cannot enjoy the benefit of both. Allis v. Hall, 56 Atl. Rep. 637,644; 76 Conn. 332; see, also, 2 Underh. Wills § 726; 2 StoryEq. Jur. § 1076.
The term "election" is also used in the sense of indicating a choice between two legacies given to one person by the same will, in which case the testator may express his intention that the legatee shall not have both, but shall elect. Ibid., 1 Pom.Jur. § 395.
On the other hand, "a power" is defined as a liberty or authority reserved by, or limited to, a person to dispose of real or personal property for his own benefit, or for the benefit of others, and operating on an estate or interest, vested either in himself or in some other person, the liberty or authority, however, not being derived out of such estate or interest, but overreaching or superseding it, either wholly or partially. A power has also been defined as an authority enabling one person to dispose of the interest which is vested in another.21 R.C.L. 772. *Page 346 
A power is also defined in Black Law Dic. 920, as "an authority to do some act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving such power, might himself perform for any purpose." "An authority enabling a person to dispose, through the medium of the statute of uses, of an interest, vested either in himself or in another person." "An authority expressly reserved to a grantor, or expressly given to another, to be exercised over lands, c., granted or conveyed at the time of the creation of such power."
In view of these authorities, it seems to be plain that the testator created no "power" in his widow by his will, but that he gave her a right to elect to take either one of two provisions made therein for her benefit, and which I have above indicated.
The prime object in construing a will is to arrive at the intention of the testator. Coffin v. Watson, 78 N.J. Eq. 307;Trustees of Princeton v. Wilson, 78 N.J. Eq. 1; 1 Pom. Eq.Jur. § 395.
The same rule, which is applicable to wills, is also to be applied in the construction of other instruments. Jaqui v.Johnson, 26 N.J. Eq. 325; Sisson v. Donnelly,36 N.J. Law 439.
Considering that what the testator gave to the widow was a right of election and not a power, this case seems to be free from difficulty. In this view the first question to be decided is whether or not an election was made in compliance with the requirements of the will. I think this question must be answered in the affirmative. While the only evidence indicating that such an election was made is the instrument executed by the executor and the widow, and which was recorded as a deed, this, to my mind, is sufficient. This instrument recited the death of the testator, and quotes paragraph "3" of the will, and recites, also, "and whereas the said Julia has, in writing, requested and directed and does now request and direct the said executor to transfer to her *Page 347 
the equal one-half of all the property of her late husband," c. This recital is evidence of a prior written request (1 Pom. Eq.Jur. § 515), as well as a statement of a then present request. There is a further declaration by the widow herself, near the end of the next paragraph, of a prior request. It is not necessary, however, for me to decide as to whether or not this recital of a past and then present request is sufficient evidence of an election by the widow, because in the next paragraph of that instrument "the said Julia * * * now makes in [on] the said Alfred Mills, executor as aforesaid, her written request and direction for such transfer." The words "such transfer" refer to the transfer which the executor is authorized to make under said paragraph "3." This paragraph provides that the widow shall, in writing, request and direct the executor to transfer the one-half of the testator's property to her if she so elects. This instrument, which is recorded as a deed, being signed by both the widow and the executor, in my judgment, is a sufficient compliance with the requirements of the will to effectuate an election by the widow of the benefits of paragraph "3" of the will.
It is contended, however, by proctors for the petitioner and Mary Werts Perkins that irrespective of the sufficiency of the widow's request the executor transferred, or attempted to transfer, to her only a one-half interest in the personal property enumerated in the inventory. I cannot accede to this proposition. There is no reference whatever in the granting clause of this instrument to any inventory. The only mention of an inventory which appears in the instrument is in the recital preceding the grant, and which recital is in the following words:
"And whereas, an inventory of the personal property of the said Jacob Vanatta by John E. Taylor and Augustus C. Canfield has this day been duly proved before the ordinary of the State of New Jersey."
This recital, to my mind, is mere surplusage, was not necessary to give effect to the grant, and the instrument would have been just as complete without it. It will be noted *Page 348 
that in the next following recital the request is directed to "one-half of all the property" of testator. It will also be noted that in the granting clause of this instrument "the executor * * * in pursuance of said request and direction of the said Julia, and in pursuance of a power conferred on him by the provisions of said will * * * does grant, bargain, sell, transfer and convey to the said Julia M.D. Vanatta the undivided half ofsaid property * * * as fully as he is empowered to do so under the terms of said will." (Italics are mine.) There is in this no reference whatever to the inventoried property. The grant is not restricted to any particular part of the estate, but transfers an undivided one-half interest in the whole. If the contention of proctors for the petitioner and Mary Werts Perkins were correct, then there would have been no transfer of any portion of the testator's real estate, because the inventory was an inventory of personal property only. In the granting clause of this instrument the property of the testator is referred to as "said property," and these words undoubtedly refer to the words "all the property of her late husband," as recited in the paragraph immediately preceding. Also, the grant is expressed to be "as fully as he is empowered to do so under the terms of said last will." The power given to the executor is a power to convey and transfer one-half of all of the property of the testator subject to debts, and I have no doubt that that was the intention of the executor in executing this instrument.
The words of this grant are in general terms, and, I think, properly so, and, no doubt, purposely. It was undoubtedly the intention of the executor to convey and transfer a one-half interest in the entire estate, and the wisdom of using general terms, instead of particularizing, is now demonstrated. If we should attribute to the executor any other intention, we would, in effect, accuse him of a violation of his trust, of an attempt to withhold from the widow something to which she was entitled, but I cannot find in the language of this instrument any evidence of any intention to do other than the executor was authorized by the will to do, and that *Page 349 
as fully and effectually as he was authorized. In my judgment it matters not that the stock, which is the subject of this controversy, was not inventoried, and the reason for the failure to include it in the inventory is immaterial. I am strongly of the opinion that this instrument effectually transferred to the widow a one-half interest in that stock, notwithstanding the rule of law which proctors for petitioner claim was declared by the enactment of the Uniform Transfer act (P.L. 1916 p. 398 § 10;1 Cum. Supp. p. 692 § 159), to which my attention has been directed. Of course, the stock itself was not transferred, but it was undoubtedly the intention of the executor to transfer a one-half interest in this property as well as all other property of the testator. This is what he ought to have done pursuant to the directions of the will. As "equity regards that as done which ought to be done," if there is any defect in this attempted transfer of a one-half interest in this stock, it may now be remedied in equity.
Considerable stress is laid upon the point that this stock was not discovered until recently, was not reduced to possession by the executor, and that, therefore, he could not, by this instrument, transfer any title thereto, and that it is now too late for the representatives of the widow to exercise the power with respect to this stock given by the will. I cannot consent to this proposition. It assumes the existence of a "power" rather than a right of election. The title to this stock was just as much in the estate of the testator at the time of his death as it was when it was discovered, irrespective as to whether that discovery was made in the lifetime of the executor or after. The stock being owned by the testator at the time of his death, the title thereto vested in the executor under the terms of the will upon the death of the testator. The right of election of the widow was to take one-half of all of the property and a half interest in this stock was included in her election. There is presented here, therefore, no question of the exercise of a power granted to a donee after the donee's death.
It is also objected that the instrument, which was executed *Page 350 
by the executor and the widow on July 2d 1879, and which is hereabove recited, was not signed as "trustee," but merely as "executor," and that, therefore, he could not transfer any interest in the stock here in question, because it had not been reduced to his possession. The answer to this, it seems to me, is that the will itself directs that the request should be made by the widow to the executor and that the executor should make the transfer; that at the time of the execution of this instrument, which was within about two months after the date of the testator's death, Alfred Mills was acting as executor. The title to the assets of the estate was at that time in him as executor, and even if this stock had not been reduced to possession (which, to my mind, is not proven in this case), this instrument transferred, at least, an equitable title to a one-half interest in the stock, and that now equity will give effect to the instrument in such a way as to accomplish that which the executorought to have done. Further than this, it may be said that it appears from a certified copy of this instrument, which was offered in evidence at the hearing and marked Exhibit C-2, that the signature of the executor appears as follows: "Alfred Mills, Executor, c." If it were necessary, in order to give effect to this instrument, I apprehend that this court could construe this instrument to have been executed by Alfred Mills as executor and trustee, but, under the circumstances, I do not deem it necessary to decide this point.
I am of the opinion that Julia M.D. Vanatta was entitled in her lifetime to a one-half interest in the stock which is the subject of this controversy, and that now the representatives of the residuary legatees under the will of Jacob Vanatta, deceased, are entitled to a one-half interest in the proceeds of that stock and the representatives of the residuary legatees of the will of Julia M.D. Vanatta are entitled to the other half of the proceeds of the sale of said stock.
I will advise a decree in accordance with these conclusions, and I will hear counsel on the question of the parties entitled to participate in the distribution when settling the form of the decree. *Page 351