This is a bill asking for instructions as to the wills of George F. Leavitt and his father, George O. Leavitt:
The facts, as agreed to between counsel, are as follows:
The Fidelity Union Trust Company was at the time of the death of George F. Leavitt, herein designated as the "son," and the death of his mother, Ida M. Leavitt, trustee under the will of George O. Leavitt, herein designated as the "father," and then had in the estate of the father securities of the approximate value of $100,000.
By the will of the father, two-thirds of the fund was held in trust for Ida M. Leavitt and one-third for the son. The son was given the power of appointment over the one-third held in trust for him, and over the two-thirds held in trust for Ida M. Leavitt, subject to the life estate of said Ida M. Leavitt. Ida M. Leavitt, his mother, survived him only a few days. The son, by his will, duly probated before the surrogate's court of the county of New York — the county *Page 166 
of his domicile — exercised the power of appointment as follows:
"Second. Whereas, under and by virtue of the power to me given under and by paragraph `Fifth,' subdivision `c,' of the last will and testament of my father, George O. Leavitt, deceased, dated on the 7th day of October, 1915, I am authorized and empowered to dispose of by will, absolutely and in all events, the trust fund created by the said paragraph `Fifth' of the said last will and testament of the said George O. Leavitt, deceased.
"Now, therefore, under and by virtue of the said power in me vested, as aforesaid, in the event of my death before the death of my mother, Ida M. Leavitt, I give, devise and bequeath to the Fidelity Trust Company, of Newark, New Jersey, my executor and trustee hereinafter named, the one-third of the estate of my father, George O. Leavitt, deceased, now held in trust for me under the terms of his last will and testament, to have, hold and administer the same upon the following trusts, however, namely:
"To invest the same from time to time in its discretion, to reinvest the same, or any portion thereof; to collect the rents, issues, income and profits thereof, and to pay the same in equal quarterly payments to my friend, Florence C. Crane, of the borough of Manhattan, city of New York, during her natural life.
"Third. Under and by virtue of the said power in me so vested, as aforesaid, I direct that upon the death of my mother, the said Ida M. Leavitt, the sum of twenty-five thousand dollars [$25,000] be paid, out of the principal of the trusts created in paragraph `Fifth' of the said last will and testament of my father, the said George O. Leavitt, deceased, to Florence C.Crane, as her sole and absolute property forever.
"Fourth. Under and by virtue of the said power in me so vested, as aforesaid, upon the death of my mother, the said Ida M. Leavitt, I give, devise and bequeath to Fidelity Trust Company of Newark, New Jersey, my executor and trustee hereinafter named, all the rest, residue and remainder of the estate of my father, the said George O. Leavitt, deceased, now held in trust for my mother, the said Ida M. Leavitt, and for myself under and by virtue of the terms of the last will and testament of my father, the said George O. Leavitt, deceased, to have, hold and administer the same upon the following trusts, however, namely:
"To invest the same from time to time in its discretion; to reinvest the same, or any portion thereof; to collect the rents, issues, income and profits thereof, and to pay the same in equal quarterly payments to my friend, Florence C. Crane, until she shall arrive at the age of fifty [50] years, when I direct that the trust created by this paragraph, of this, my last will and testament, shall terminate and come to an end, and that the principal of said trust then shall be paid over to the said Florence C. Crane, as her sole property, absolutely and forever. *Page 167 
"Fifth. In the event of the said Florence C. Crane predeceasing my mother, the said Ida M. Leavitt, or in the event of the said Florence C. Crane dying before she, the said Florence C. Crane, shall have arrived at the age of fifty [50] years, then, and in either event, I direct that the principal of the trusts created by paragraphs `Second' and `Third' of this, my last will and testament, be paid and distributed in such proportions and to such person or persons as she, the said Florence C. Crane, may, by her last will and testament, in writing, designate to receive the same, and in default of such designation, to her heirs and next of kin."
The son left debts aggregating, approximately, $34,000. One claim was made for approximately $20,000, upon which suit was brought in this court and settlement was made by and with the approval of this court on the payment of $10,000. There are still unpaid claims amounting to $14,597.40. The son's estate did not exceed $500.
The Fidelity Union Trust Company, as trustee under the father's will, paid to the complainant $22,500 of the $25,000 appointed to her by the will of the son, and suit was brought to recover the balance of said appointment and to accelerate the trust appointed by paragraph "Second" of the will of the son on the theory that the remainder in said fund had not been appointed, and that the complainant had procured an assignment of the interest of the remainderman therein.
The first question is, After the exhaustion of the estate of George F. Leavitt, the son, should the trustee apply so much of the estate of the father as may be necessary to pay the son's debts? I think it should.
In Clapp v. Ingraham, 126 Mass. 200, the facts were that Mrs. Ingraham had the income from a trust fund with power of appointment by will. She exercised the power of appointment in favor of her children, but left debts. A bill was filed for instructions as to whether or not the debts should be paid from the trust estate. Chief-Justice Gray says:
"It was well settled in the English court of chancery before the middle of the last century that where a person has a general power of appointment, either by deed or by will, and executes this power, the property appointed is deemed in equity part of his assets, and subject to the demands of *Page 168 
his creditors in preference to the claims of his voluntary appointees or legatees. The rule, perhaps, had its origin in a decree of Lord Somers, affirmed by the house of lords, in a case in which the person executing the power had, in effect, reserved the power to himself in granting away the estate. Thompson v.Towne, Prec. Ch. 52; S.C., 2 Vern. 319. But Lord Hardwicke repeatedly applied it to cases of the execution of a general power of appointment by will of property of which the donee had never had any ownership or control during his life; and, while recognizing the logical difficulty that the power, when executed, took effect as an appointment, not of the testator's own assets, but of the estate of the donor of the power, said that the previous cases before Lord Talbot and himself [of which very meagre and imperfect reports have come down to us] had established the doctrine that when there was a general power of appointment, which it was absolutely in the donee's pleasure to execute or not, he might do it for any purpose whatever, and might appoint the money to be paid to his executors if he pleased, and, if he executed it voluntarily and without consideration, for the benefit of third persons, the money should be considered part of his assets, and his creditors should have the benefit of it. Townshend v. Windham, 2 Ves. Sen. 1, 9, 10;Ex parte Caswall, 1 Atk. 559, 560; Bainton v. Ward, 7 Ves. 503,note; S.C., cited 2 Ves. Sen. 2, and Belt's Supp. 243; 2 Atk.172; Pack v. Bathurst, 3 Atk. 269. The doctrine has been upheld to the full extent in England ever since. Chance Pow.ch. 5 ¶ 2; 2 Sugd. Pow. (7th ed.) 27; Fleming v. Buchanan, 3DeG. M. G. 976.
"Although the soundness of the reasons on which the doctrine rests has been impugned by Chief-Justice Gibson, arguendo, and doubted by Mr. Justice Story in his commentaries, the doctrine is stated by both Judge Story and by Chancellor Kent as well settled; and it has been affirmed by the highest court in New Hampshire, in a very able judgment delivered by Chief-Justice Parker, and applied to a case in which a testator devised property in trust to pay such part of the income as the trustees should think proper to his son *Page 169 
for life, and, after the son's death, to make over the principal, with any accumulated income, to such persons as the son should by will direct. Commonwealth v. Duffield, 12 Pa. St. 277, 279,281; Story Eq. Jur. ¶ 176 and note; 4 Kent Com. 339, 340;Johnson v. Cushing, 15 N.H. 298.
"A doctrine so just and equitable in its operation, clearly established by the laws of England before our revolution, and supported by such a weight of authority, cannot be set aside by a court of chancery, because of doubts of the technical soundness of the reasons on which it was originally established."
The following cases also support this view: Vinton v. Pratt,228 Mass. 468; 117 N.E. Rep. 919; L.R.A. (1918) D 343;O'Donnell v. Barbbey, 129 Mass. 453; U.S. v. Field,255 U.S. 257 (opinion by Mr. Justice Pitney).
The second question is, Should the $25,000 appointed to complainant under paragraph third of the will of George F. Leavitt bear its proportion of such payment? I think not, for the reason stated in the case of McCook v. Mumby, 64 N.J. Eq. 394
(at p. 400).
"Upon the execution of a power of appointment of this sort, it is well said in law that the appointee takes, not from the person who appoints, but from the original donor or testator, or that the interest of any person in a fund acquired by appointment of George Lord Day was an interest which emanated from the original testator, Henry Day, George being only the indicator pointing out to whom the testator's bounty should go."
See, also, Legett v. Doremus, 25 N.J. Eq. 122, and Morse
v. Hackensack Savings Bank, 47 N.J. Eq. 283.
The third and fourth questions are, Should the debts, and the sum of $7,000 advanced to George F. Leavitt, be charged against the trust fund appointed under the fourth paragraph of the son's will, or be apportioned between that trust and the trust appointed by paragraph second of the son's will? I think they should be apportioned, and McCook v. Mumby, supra, is authority for this conclusion. *Page 170 
The last question is, Has the complainant, by the assignment from Thomas C. Longley, acquired the remainder interest under paragraph second of the will of the son, and, if so, is she entitled to have the trust accelerated and the corpus paid to her? Longley enters the situation by reason of a clause in the father's will, which reads as follows:
"Upon the death of my said son, George F. Leavitt, to pay and distribute the funds so held in trust for him, and upon the death of my said wife, if she survive him, the fund so held in trust for her, in such proportions and to such person or persons as he, my said son, George F. Leavitt, may, by his last will and testament, in writing, designate to receive the same, and in default of such designation to his issue, if any he have, but should he die without issue him surviving, then to Thomas C. Longley."
Although the son died without issue, he exercised the power of appointment.
I do not see, therefore, that Longley had any remainder in the trust fund created under paragraph two.
By the fourth paragraph of the son's will he gives the remainder of the estate held in trust for his mother and himself to Fidelity Trust Company to pay the income to complainant until she reaches the age of fifty, at which time the principal is to be paid to her.
In the fifth paragraph he directs that the principal of the trusts created in paragraphs second and third, should complainant die before reaching the age of fifty, be paid to such persons as she may by will designate, and in default of such designation to her heirs and next of kin.
This is, undoubtedly, a mistake. There is no trust in paragraph third. He, undoubtedly, meant paragraphs second and fourth. The complainant is not yet fifty, and has a daughter, an infant. I am of the opinion that testator meant complainant to have thecorpus only on condition that she reach the age of fifty; gave her the right of appointment in case she died before that time, and in default of such appointment to her heirs and next of kin. This gives complainant a life estate, and the infant has an interest which can be defeated only by the mother's arriving at the age of *Page 171 
fifty, or by her death before that time, leaving a will in which there is an appointment. Winterbaum v. Deusel,94 N.J. Law 480.
I agree with counsel that the $2,100 received from W.A. Morschauer by complainant, after testator's death, was an executed gift, and the estate has no interest therein.
I will advise a decree in conformity with these conclusions.