It is the conviction of the State Tax Commissioner that one Emily Barton Pendleton, a resident of Ventnor City, Atlantic County, New Jersey, transmitted property at her death having a net taxable value of $854,618.68. This appeal, however, implicates only the assessment of a transfer and succession tax upon certain intangible personal property valued at $148,578.25. A brief survey of the acknowledged facts will reveal the basis of discord between the taxing authority and the representatives of the decedent's estate.
Mrs. Pendleton died testate on February 24th, 1940. She had been a resident of this state since 1907. She left no issue, and her surviving next of kin were two first cousins and a first cousin once removed. Her last will and testament was executed on January 5th, 1933, and has been probated in Atlantic County, New Jersey. On February 27th, 1882, the decedent, then unmarried and a resident of Pennsylvania, *Page 122 
assigned in trust certain of her assets to The Pennsylvania Company for Insurance on Lives and Granting Annuities, a corporation of the Commonwealth of Pennsylvania, having its principal office and place of business in the City of Philadelphia. The uses and purposes were stated as follows:
"In Trust during the life time of her the said Emily Barton, to pay to her, from time to time, the net income thereof, free and clear of her debts, contracts, alienations and anticipations, and of all liability for levies and attachments.
 * * * * * * *
"In Trust upon her decease (with power to make all allotments and conveyances necessary to perfect the partition, including conveyances to purchasers, if they shall find it advisable to sell with a view to a better partition) to pay over, assign and convey the principal to such persons, for such estates, legal equitable, life or otherwise, and with such powers, as she, the said Emily Barton by any last Will or writing in the nature thereof, shall appoint, or, upon her decease in case she shall not exercise this power of appointment, to divide the principal into as many parts or shares as there shall be children of hers then alive; and children of hers then deceased, represented by descendants then living, and to sub-divide the shares falling to each set of descendants of a child of hers then dead, among them`per stirpe' upon the principle of representation and to pay over to such child and descendant, who shall then be found entitled, its share in fee. In Trust in case of the death of the said Emily Barton without her having exercised her power of appointment there shall be no descendants of hers then alive, to pay over, assign and convey the said principal to such persons as would then take the real and personal estate, as heirs and next of kin of the said Emily Barton had she then died actually seized and possessed thereof."
The assets so assigned have continuously remained in the custody of The Pennsylvania Company at its office in Philadelphia where the trust has also been regularly administered.
The decedent made no specific reference in her will or codicil to the power of appointment reserved by her under the terms of the trust indenture of 1882. Paragraph 12 of her will reads in part:
"Twelfth. All the rest, residue and remainder of my estate, real, personal and mixed of whatsoever nature and wheresoever situate, including all lapsed legacies, lapsed bequests, lapsed sums of every nature and kind arising from any and all personal property, sales of real estate held in my residuary estate, principal to pay annuities in case of death and also including the principal of the trust funds over *Page 123 
which I am, given the power of appointment by the Will of Susan R. Barton, deceased, and in execution of any and all powers given to me and contained in the said Will of the said decedent, I give, devise and bequeath in equal shares or parts to the Jefferson Medical Hospital of Philadelphia (1) for research work in the application of radium for the treatment of cancer and for the purchase of radium for such treatment, or for such other purposes in the treatment of the said disease as the Board of Trustees of the said Hospital may hereafter determine to be advisable and shall be found and determined by them to be the best method of the treatment of the said disease, having in mind the probable development of research work in connection with its treatment, in memory of my husband, Edward Gray Pendleton, and (2) to the said Jefferson Medical College Hospital of Philadelphia, Department of Disease of the Chest, for the study of tuberculosis and the care of those who may be in the said Hospital for the treatment of the same, in memory of my mother, Emily C. Barton. These gifts are conditioned upon the agreement by the said Hospital that no part of the fund, income or principal shall be used for any purpose connected with vivisection, to which I am unalterably opposed."
The executors sought to have this court construe the decedent's will to determine, inter alia, whether or not the testatrix executed the power of appointment. David v. Atlantic CountyS.P.C.A., 129 N.J. Eq. 501; 19 Atl. Rep. 2d 896.
In that cause, Vice-Chancellor Sooy stated that in view of the fact that a court of competent jurisdiction of the State of Pennsylvania then had that question before it for determination, this court should not attempt to exercise any jurisdiction that it might have.
Although I do not discover any proof of the event in the record, yet the briefs impart the information that the Philadelphia County Orphans Court has resolved that the general residuary clause (paragraph 12, supra) was operative under the law of Pennsylvania to transport the trust estate to the Jefferson Medical College Hospital to the exclusion of the decedent's heirs-at-law and next of kin who would have succeeded to the property had the determination been that the testatrix failed to exercise the power of appointment.
It is conceded that all of the trust property was committed to the custody of the trustee during the years 1882 to 1886, inclusive, manifestly preceding the enactment of the first *Page 124 
collateral inheritance tax law in this state, effective March 23d 1892. P.L. 1892 p. 206.
Incidentally, the possibility of a diminution in the amount of the levy is foreseen, depending upon whether the hospital (perhaps a charitable institution) or the next of kin of the deceased, ultimately succeed to the trust assets. This, however, is an administrative detail which can be adjusted as the event may require.
The Tax Commissioner determined that the transfer of the personal property of the 1882 trust was subject to transfer inheritance tax in this state for the reason that the reservation of income to the settlor or donor for life and the power of appointment over the corpus of the trust likewise reserved to herself by the donor until death, exposed it to taxation as a transfer intended to take effect in possession and enjoyment at or after the death of the donor, and that the donor's enjoyment of that general power of appointment during the lengthy period of her domicile in New Jersey, adequately conferred the jurisdiction of this state to levy an inheritance tax on the transfer of thecorpus at death, notwithstanding the continued physical situs
of the property in the Commonwealth of Pennsylvania. R.S.54:34-1, c; N.J.S.A. 54:34-1, c.
The executors do not challenge the power of this state to tax a transfer of intangibles where the owner, domiciled within this state, keeps the paper evidences of the intangibles outside its boundaries. Curry v. McCanless, 307 U.S. 357; 83 L.Ed. 1339;59 S.Ct. 900; 123 A.L.R. 162; Graves v. Elliott, 307 U.S. 383;83 L.Ed. 1356; 59 S.Ct. 913; Central Hanover Bank and Trust Co.
v. Martin, 129 N.J. Eq. 186; 18 Atl. Rep. 2d 45; affirmed,127 N.J. Law 468; 23 Atl. Rep. 2d 284; affirmed,129 N.J. Law 127; 28 Atl. Rep. 2d 174, and affirmed on appeal to the United States Supreme Court in 319 U.S. 94; 87 L.Ed. 914.
The petitioners endeavor to intercept the tax assessment by contending that except possibly in the limited situations covered by R.S. 54:34-1; N.J.S.A. 54:34-1, subsecs. d(1) andd(2), the New Jersey Inheritance Tax Statute was not intended to encompass an irrevocable transfer of intangible property by deed inter vivos completed in another state by *Page 125 
a resident of such other state, even though such settlor retains a power of appointment and dies a resident of New Jersey.
Our statute (R.S. 54:34-1; N.J.S.A. 54:34-1) also ordains that:
"Except as provided in section 54:34-4 of this title, a tax shall be and is hereby imposed at the rates set forth in section 54:34-2 of this title upon the transfer of property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to or for the use of any transferee, distributee or beneficiary in the following cases:
 * * * * * * *
"c. Where real or tangible personal property within this state of a resident of this state or intangible personal property wherever situate of a resident of this state or real or tangible personal property within this state of a non-resident, is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."
The legislative intent to tax the transfer by a resident of intangible personal property wherever situate is manifest. See, also, R.S. 54:33-1; N.J.S.A. 54:33-1. When trust property located elsewhere may be deemed to be constructively within this state under the mobilia sequuntur personam rule for the purposes of inheritance taxation has been dealt with by our courts on at least three recent occasions. Taken in their order of determination they are: MacClurkan v. Bugbee,106 N.J. Law 192; 150 Atl. Rep. 443; reversing 105 N.J. Law 89;143 Atl. Rep. 757; Kings County Trust Co. v. Martin, 121 N.J. Law 290;2 Atl. Rep. 2d 187; reversing In re Edmonston, 123 N.J. Eq. 34; 196 Atl. Rep. 656; Central Hanover Bank and Trust Co. v.Martin, supra.
In MacClurkan v. Bugbee, supra, the donor, then a resident of Illinois, created a trust comprised of intangibles and nominated a resident of Illinois to serve as trustee. The donor retained for her own use the income for life and made provisions effective at her death. The power to revoke the trust agreement was to arise and devolve upon the donor after a period of five years from the date of the instrument. Subsequent to the creation of the trust she became, and died, a resident of New Jersey. The donor died within the stated *Page 126 
period, and therefore during her life she did not possess the power of revocation.
Mr. Justice Case, expressing the decision of the court, remarked (at p. 198): "To say that a transfer is made by a resident of this state, when it admittedly was made by a person who at the time was not and never had been such a resident and who, though she did subsequently become a resident, had no power, during the period of her residency to make or unmake the transfer, seems to us self-contradictory. It well nigh carries its own disproof." In that most influential particular, theMacClurkan Case is distinctly dissimilar.
In Kings County Trust Co. v. Martin, supra, a revocable trust of intangible personal property, at all times physically present in the State of New York in the custody of a trustee of that state, was created by a donor then residing in that state who thereafter died a resident of New Jersey without having exercised his power of revocation. Commenting relative to the decision in the MacClurkan Case, Mr. Justice Porter observed:
"That case is distinguishable from the case at bar in what seems to us a vital particular; to wit, there the trust was an irrevocable one while here it is revocable. It will be noted that emphasis is laid over and over again in the MacClurkan opinion, that it was an irrevocable trust and that the decedent had no power of revocation, care or custody over the fund whatsoever.
"The situation here is radically different because the donor could revoke the trust in whole or in part. He exercised complete control and dominion over it. In fact he did, as above noted, exercise control by reducing the amount of the trust fund twice since becoming a resident in this state. Therefore it seems to us that he was never divested of this fund, but was in as complete control over it as he was of his other property not the subject of the trust instrument. In that status it passed upon his death under the conditions of the terms of the trust deed and under our statutes that is the test of taxability. In other words, thecorpus of this trust fund took effect `in possession or enjoyment' at the death of the donor. In re Fosdick, 102 N.J. Eq. 45; 139 Atl. Rep. 318; Hasbrouck *Page 127 
v. Martin, 120 N.J. Eq. 96, 101; Chase National Bank v. UnitedStates, 278 U.S. 327; Plainfield Trust Co. v. McCutcheon,8 N.J. Mis. R. 593; affirmed, 108 N.J. Law 201; Koch v.McCutcheon, 111 N.J. Law 154.
 * * * * * * *
"The principle enunciated in the line of cases cited below is that what is taxed is not the property (so its location is not important) but rather the succession to the title and the beneficial enjoyment of the property which took place by reason of the death." (Citing cases.)
Incidentally, I note that the case, In the Matter of Brown,274 N.Y. 10, emphasized by the petitioner in the Kings CountyTrust Co. Case, was upon reargument before the United States Supreme Court, reversed sub nom. Graves v. Elliott, supra.
The somewhat comparable facts of the case invite attention again to Curry v. McCanless, supra. There, a resident of Tennessee transferred in trust certain intangibles to an Alabama corporation engaged in business in that state. The settlor required that the net income be paid to her for life and she retained for herself the power to dispose of the trust estate (corpus) by her last will, and in default thereof, distribution was to be made to certain designated persons. She exercised the power by will. The Supreme Court of Tennessee decreed that the trust property was taxable by that state and an appeal from that determination was taken to the United States Supreme Court, where the taxation of intangibles was considered. The following excerpts from the opinion are illuminative:
"The power of government and its agencies to possess and to exclude others from possessing tangibles, and thus to exclude them from enjoying rights in tangibles located within its territory, affords adequate basis for an exclusive taxing jurisdiction. When we speak of the jurisdiction to tax land or chattels as being exclusively in the state where they are physically located, we mean no more than that the benefit and protection of laws enabling the owner to enjoy the fruits of his ownership and the power to reach effectively the interests protected, for the purpose of subjecting them to payment of *Page 128 
a tax, are so narrowly restricted to the state in whose territory the physical property is located as to set practical limits to taxation by others. Other states have been said to be without jurisdiction and so without constitutional power to tax tangibles if, because of their location elsewhere, those states can afford no substantial protection to the rights taxed and cannot effectively lay hold of any interest in the property in order to compel payment of the tax. See Union Refrigerator Transit Co.
v. Kentucky, 199 U.S. 194, 202; 50 L.Ed. 150, 152; 26 S.Ct. 36;4 Ann. Cas. 493; Frick v. Pennsylvania, 268 U.S. 473, 489 etseq.; 69 L.Ed. 1058, 1062; 45 S.Ct. 603; 42 A.L.R. 316.
"Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. See Chicago, R.I. and P. Railroad Co. v. Sturm,174 U.S. 710, 716; 43 L.Ed. 1144, 1146; 19 S.Ct. 797; Harris v.Balk, 198 U.S. 215, 222; 49 L.Ed. 1023, 1026; 25 S.Ct. 625;3 Ann. Cas. 1084. Obviously, as sources of actual or potential wealth — which is an appropriate measure of any tax imposed on ownership or its exercise — they cannot be dissociated from the persons from whose relationships they are derived. These are not in any sense fictions. They are indisputable realities.
"The power to tax `is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation.' M'Culloch v.Maryland, 4 Wheat. 316, 429; 4 L.Ed. 579, 607. But this does not mean that the sovereign power of the state does not extend over intangibles of a domiciled resident because they have no physical location within its territory, or *Page 129 
that its power to tax is lost because we may choose to say they are located elsewhere. A jurisdiction which does not depend on physical presence within the state is not lost by declaring that it is absent.
 * * * * * * *
"The decedent's power to dispose of the intangibles was a potential source of wealth which was property in her hands from which she was under the highest obligation, in common with her fellow citizens of Tennessee, to contribute to the support of the government whose protection she enjoyed. Exercise of that power, which was in her complete and exclusive control in Tennessee, was made a taxable event by the statutes of the state. Taxation of it must be taken to be as much within the jurisdiction of the state as taxation of the transfer of a mortgage on land located in another state and there subject to taxation at its full value.
 * * * * * * *
"For purposes of taxation, a general power of appointment, of which the testatrix here was both donor and donee, has hitherto been regarded by this court as equivalent to ownership of the property subject to the power. Chanler v. Kelsey,205 U.S. 466; 51 L.Ed. 882; 27 S.Ct. 550; Bullen v. Wisconsin, supra
(240 U.S. 630; 60 L.Ed. 835; 36 S.Ct. 473); Chase NationalBank v. United States, 278 U.S. 327, 338; 73 L.Ed. 405, 409;49 S.Ct. 126; 63 A.L.R. 388. See Gray, Perpetuities (3d ed.1916), § 524. Whether the appointee derives title from the donor, under the common law theory, or from the donee by virtue of the exercise of the power, is here immaterial. In either event the trustee's title under the will was derived from decedent, domiciled in Tennessee.
 * * * * * * *
"It has hitherto been the accepted law of this court that the state of domicile may constitutionally tax the exercise or non-exercise at death of a general power of appointment, by one who is both donor and donee of the power, relating to securities held in trust in another state. Bullen v. Wisconsin,240 U.S. 625; 60 L.Ed. 830; 36 S.Ct. 473, supra."
It is advantageous to recognize that the Supreme Court *Page 130 
of the United States in Graves v. Elliott, supra, wherein the donor reserved a power to revoke, arrived at a conclusion essentially similar to that announced in Curry v. McCanless, in which a power to appoint was present.
It is, of course, evident that the facts in the present case are distinguishable in some respects from those existent inGraves v. Elliott and Curry v. McCanless. In the CurryCase the donor was a resident of the State of Tennessee at the time of the creation of the trust. In the Graves Case a power of revocation rather than a power of appointment was involved. For tax purposes the court seems to have ascribed the same significance to powers of revocation and general powers of appointment. In either circumstance, it is the power of control over the disposition of the trust estate by the resident which determines the jurisdiction of the state to tax the transfer of intangibles.
It is the insistence of the Tax Commissioner that the retention by the decedent of the power to dispose of the trust property by will for the benefit of her own estate, her creditors or others, constituted a reservation of control and dominion over the trust property during the time she was a resident of this state. That point of argument encourages an inquiry into the nature, character and effect of a power of appointment by will. I encounter the commentary of the authors of the 3 Restatement ofthe Law of Property 1810 ch. 25:
"As late as the beginning of the twentieth century it could fairly be said that there was no such thing as an American law of powers of appointment. Cases were few and opinions tended to reach conclusions upon uncritical citation of English authorities. There was little independent consideration of particular doctrines and little apparent reliance upon the salutary principle that the English common law is controlling only so far as it is compatible with American legal institutions. Even at the present time (1940) the American case authority on powers of appointment is distinctly thin in quantity — so thin that in nearly all states there are many important matters upon which local decisions are not yet conclusive, and in many states practically the entire field remains free for future development. However, the number of cases presented *Page 131 
to the courts is now rapidly increasing, due largely to the verysubstantial estate and inheritance tax advantages which often canbe obtained by the creation of trusts with powers ofappointment. This situation makes it possible for the American law of powers in the course of its growth to adopt the benefits but avoid the anomalies of the English law." (Italics mine.)
A power of appointment at the common law has been defined as a liberty or authority reserved by, or limited to, a person to dispose of real or personal property for his own benefit, or for the benefit of others, and operating on an estate or interest, vested either in himself or in some other person, the liberty or authority, however, not being derived out of such estate or interest but overreaching or superseding it, either wholly or partially. In re Vanatta, 99 N.J. Eq. 339; 131 Atl. Rep. 515;41 Am. Jur. 806.
At the common law there was a variety of classifications of powers of appointment such as general powers, special powers, powers in gross, general testamentary powers in gross, special testamentary powers in gross, powers appendant, powers appurtenant, special collateral powers and general collateral powers. Brown v. Fidelity Union Trust Co., 126 N.J. Eq. 406,423; 9 Atl. Rep. 2d 311.
In the last cited case, Vice-Chancellor Berry adopted the following quotation from the opinion in Lyon v. Alexander,304 Pa. 288; 156 Atl. Rep. 84:
"For all practical purposes there may be said to be two marked differences in powers of appointment; they can be summarized as general and special powers. The general are those in which the donee of the power may appoint to anyone, and the special, in which the donee of the power is restricted to passing on the property to certain specified individuals or to a specific class of individuals. In the latter case, there is a sound reason why the repository of the power should not be permitted to extinguish it, because the testator has indicated the persons to whom the property shall go, and there is reposed in the appointee of the power a confidence, something partaking of the nature of a trust; but where the power is a general one, under which the donee may appoint to any one, *Page 132 
the testator has completely relinquished all dead hand dominion over the property, and has placed it for all practical purposes as completely within the control of the donee of the power asthough a fee had been created in him." (Italics supplied.)Vide, United States Trust Co. v. Montclair Trust Co., 133 N.J. Eq. 579; 33 Atl. Rep. 2d 901.
It is immediately observable that under the terms of the trust deed, Mrs. Pendleton retained for herself (a) all of the income accruing from the assets of the trust for the period of her natural life, and also (b) the power to govern the future transmission of the corpus by her will. These attributes of property continued to repose in her during her domicile in this state.
Utilizing the modern and less definitive distinctions, it is resolved that Mrs. Pendleton had a general power to appoint any beneficiaries she desired, including her own estate and her creditors. Fidelity Union Trust Co. v. Suydam, 125 N.J. Eq. 458; 6 Atl. Rep. 2d 392.
It is perceivable from the language of the trust indenture that the donor intended to establish in her own favor a trust of the nature of a spendthrift trust. She, however, named herself as the life beneficiary and the donee of a general power of appointment. The property gratuitously appointed would in some circumstances be considered in equity part of her assets to which her creditors might resort. Ward v. Marie, 73 N.J. Eq. 510;68 Atl. Rep. 1084; Crane v. Fidelity Union Trust Co., 99 N.J. Eq. 164;133 Atl. Rep. 205; Seward v. Kaufman, 119 N.J. Eq. 44;180 Atl. Rep. 857. Apparently the law of Pennsylvania (as to which the record herein is silent) did not afford her the immunity from claims of creditors sought to be attained by the creation of a spendthrift trust. The Supreme Court of that state held inC.I.T. Corp. v. Flint, 333 Pa. 350; 5 Atl. Rep. 2d 126:
"One cannot create a spendthrift trust in property for his own benefit, nor by any other device exclude creditors while retaining the beneficial interest, and the incidents of ownership and control, as, for example, by settling it in trust for himself for life, free from his debts and obligations, with remainder to the use of his appointees by will, and, in default *Page 133 
of such appointment, to the use of his heirs. Mackason's Appeal,42 Pa. 330; 82 Am. Dec. 517; Ghormley v. Smith, 139 Pa. 584;21 Atl. Rep. 135; 11 L.R.A. 565; 23 Am. St. Rep. 215; Nolan v.Nolan, 218 Pa. 135; 67 Atl. Rep. 52; 12 L.R.A. (N.S.) 369;Egbert v. De Solms, 218 Pa. 207; 67 Atl. Rep. 212; Rienzi v.Goodin, 249 Pa. 546; 95 Atl. Rep. 259; Benedict v. Benedict,261 Pa. 117; 104 Atl. Rep. 581; Patrick v. Smith, 2 Pa. Super. 113; Philadelphia v. Meredith, 49 Pa. Super. 600." Such, also, is the general rule. 119 A.L.R. 35.
True, a general power of appointment does not have the elements of a title, estate or ownership in the property as understood in the technically restricted acceptation of those terms. Cf. In reGemmell, 123 N.J. Eq. 315, 318; 197 Atl. Rep. 428. But, considering it as an unrestricted power to transfer the property, there inheres in it a measure of control proprietary in nature and normally incident to ownership. Thus, in the field of transfer inheritance taxation it is deemed the equivalent of ownership. Curry v. McCanless, supra; Graves v. Schmidlapp,315 U.S. 657; 86 L.Ed. 1097; 62 S.Ct. 870. The following Pennsylvania cases are pertinent: Lyon v. Alexander, supra; Inre Curran's Estate, 312 Pa. 416; 167 Atl. Rep. 597; In rePerkins' Trust Estate, 314 Pa. 49; 170 Atl. Rep. 255. See, also,In re McCord's Estate, 120 Atl. Rep. 413 (collateral transfer inheritance tax appeal).
Assuredly, a complete and immediately effective gift intervivos is not taxable by our statute unless the gift is made in contemplation of death. Squier v. Martin, 131 N.J. Eq. 263;24 Atl. Rep. 2d 865. Cf. In re Perry, 111 N.J. Eq. 176;162 Atl. Rep. 146; In re Fosdick, supra. For transfer tax purposes, can the shifting of the economic benefits and burdens of property which is the subject of a succession tax be regarded as complete where the donor reserves the right to enjoy the issues of thecorpus during life and retains the power to restore thecorpus to her own estate or otherwise dispose of it by will? So long as the privilege of succession has not been fully exercised, it may be reached by the tax, and technical distinctions respecting the refinements or qualities *Page 134 
of title and proprietary rights are of little avail in determining whether it has been so exercised. Estate of Sanford
v. Commissioner, 308 U.S. 39, 43, 44; 84 L.Ed. 20; 60 S.Ct. 51.
The significant matter is the retention of control over the disposition of the trust property. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete.Plainfield Trust Co. v. McCutcheon, supra; Hartford v.Martin, 122 N.J. Law 283; 4 Atl. Rep. 2d 31; Saltonstall
v. Saltonstall, 276 U.S. 260; 72 L.Ed. 565; 48 S.Ct. 225; ChaseNational Bank v. United States, supra.
The petitioners submit that in the present case the property was irrevocably transferred by the trust indenture executed in 1882, and that no "transfer" of the property from a "resident decedent" occurred since the enactment of our taxing statute. The answer is found in applying the established meaning and intent of our statute to the factual circumstances. The decedent resided in this state from 1907 until her death here on February 24th, 1940. The transfer contemplated by our statute is that of the settlor to her beneficiary and not that to her trustees. Carter v.Bugbee, 92 N.J. Law 390; 106 Atl. Rep. 412. The important factor is not the form but the substance of the transaction.Squier v. Martin, supra. Obviously, the deed of trust was a transfer of the mere naked title to the property in which the donor expressly reserved and thereby postponed the happening of an actual transfer of the full possession and enjoyment of the property by the beneficiary until after her death. AmericanBoard of Commissioners, c., v. Bugbee, 98 N.J. Law 84;118 Atl. Rep. 700; Moore v. Bugbee, 3 N.J. Mis. R. 435;128 Atl. Rep. 679; affirmed, 102 N.J. Law 720; 135 Atl. Rep. 919;Congregational Home Missionary Society v. Bugbee,101 N.J. Law 214; 127 Atl. Rep. 192.
The adjudicated cases reveal that a transfer intended to take effect in beneficial possession and enjoyment at or after the death of the donor is amenable to a transfer inheritance tax effective at the time of the death of the donor even though the taxing act is enacted subsequent to the date of the transfer in trust, where the donor by the reservation of a power to *Page 135 
revoke or a power to substantially alter and amend the provisions of the deed of trust, has reserved control over the transmission of the property. A transfer may similarly remain incomplete, defeasible and contingent by reason of a power reserved by the donor to vest the gift with the attributes of full beneficial possession and enjoyment in some ultimate beneficiary of her choice to be effectively announced by her last will and testament. Such a gift is not intended to become effective in beneficial possession and enjoyment and beyond recall prior to and independently of the death of the donor, and in the present case, the exercise of such a power was in the control of the decedent during the period of her residence in this state.Farmers Loan and Trust Co. v. Bugbee, 6 N.J. Mis. R. 415;141 Atl. Rep. 579. Mr. Justice Stone in Estate of Sanford v.Commissioner, supra, declared: "Since it was the relinquishment of the power which was taxed as a transfer and not the transfer in trust, the statute was not retroactively applied." It is the exercise or the relinquishment of such a power of general appointment which is taxed and which, in the present case, effectively governed the ultimate succession in beneficial possession and enjoyment of the corpus of the trust at and after the death of the decedent.
The applicability of the provisions of subsections d(1) and d(2) need not be determined. It is not evident that the specific reference to powers of appointment contained in those subsections was intended to exclude the application of other apposite provisions of the statute.
 The assessment is affirmed. *Page 136