In the Matter of the Estate of KATHERINE H. BROWN, Deceased.

MARION B. ELLIOTT et al., as Executors of KATHERINE H. BROWN, Deceased, Appellants.

STATE TAX COMMISSION, Respondent.

Argued March 2, 1937; decided April 27, 1937.

*Frederick C. Bangs* for appellants. The trust fund acquired an actual and permanent situs in Colorado, analogous to the actual situs of tangible personal property. (*Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83; *People ex rel. Van Norden Trust Co.* v. *Wells*, 118 App. Div. 881; 192 N. Y. 552; *Thorne* v. *State*, 145 Minn. 412; *Lowry* v. *Los Angeles*, 38 Cal. App. 158; *Hutchins* v. *Commissioner*, 272 Mass. 422; *Baker* v. *State*, 186 Minn. 160; *Commonwealth* v. *Appalachian Power Co.*, 159 Va. 462; *Brooke* v. *Norfolk*, 277 U. S. 27; *Matter of Dolan*, 279 Penn. St. 582; *Anderson* v. *Wilson*, 289 U. S. 20; *Archer-Shee* v. *Garland*, [1931] A. C. 212; *DeGanay* v. *Lederer*, 250 U. S. 376; *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204; *Guthrie* v. *Pittsburgh Ry. Co.*, 158 Penn. St. 433; *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69.) The actual and permanent situs in Colorado of the trust fund was in no way affected by the removal of the settlor several years later to New York. (*Crane Co.* v. *Des Moines*, 208 Iowa, 164; *State Board of Assessors* v. *Comptoir National D'Escompte*, 191 U. S. 388; *Bristol* v. *Washington County*, 177 U. S. 133; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395; *Liverpool Ins. Co.* v. *Board of Assessors*, 221 U. S. 346; *Frick* v. *Pennsylvania*, 268 U. S. 473; *Matter of Swift*, 137 N. Y. 77; *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83; *People ex rel. Whitney* v. *Tax Commissioners*, 299 U. S. 366; *First Nat. Bank* v.

*Maine,* 284 U. S. 312; *Blodgett* v. *Silberman,* 277 U. S. 1; *Baldwin* v. *Missouri,* 281 U. S. 586; *Matter of Frank,* 192 Minn. 151; *Hutchison* v. *Ross,* 262 N. Y. 381; *DeGanay* v. *Lederer,* 250 U. S. 376; *Union Refrig. Transit Co.* v. *Kentucky,* 199 U. S. 194.) Neither the trust fund nor its transfer can be constitutionally subjected to a transfer tax in New York. (*First Nat. Bank* v. *Maine,* 284 U. S. 312; *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83; *Frick* v. *Pennsylvania,* 268 U. S. 473; *Matter of Canda,* 197 App. Div. 597; *Wachovia Bank & Trust Co.* v. *Doughton,* 272 U. S. 567; *Hutchison* v. *Ross,* 262 N. Y. 381; *Matter of Dolan,* 279 Penn. St. 582; *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *Baldwin* v. *Missouri,* 281 U. S. 586; *Matter of Scott,* 129 Misc. Rep. 625; *Matter of Swift,* 137 N. Y. 77; *United States* v. *Field,* 255 U. S. 257; *Walker* v. *Treasurer,* 221 Mass. 600; *Matter of Bowditch,* 189 Cal. 377.) If section 249-r of the Tax Law (Cons. Laws, ch. 60) is to be construed so as to impose a transfer tax upon the trust fund, then the statute itself is invalid as violative of the due process of law clause of section 6 of article 1 of the New York Constitution and of the Fourteenth Amendment of the Constitution of the United States. (*Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83; *Frick* v. *Pennsylvania,* 268 U. S. 473; *First Nat. Bank* v. *Maine,* 284 U. S. 312; *Wachovia Bank & Trust Co.* v. *Doughton,* 272 U. S. 567; *Union Refrig. Transit Co.* v. *Kentucky,* 199 U. S. 194; *Matter of Weiden,* 263 N. Y. 107; *Provident Sav. Assn.* v. *Kentucky,* 239 U. S. 103; *Matter of Canda,* 197 App. Div. 597; *Moore* v. *Mitchell,* 281 U. S. 18; *Colorado* v. *Harbeck,* 232 N. Y. 71; *Matter of Martin,* 255 N. Y. 359.)

*Seth T. Cole* and *Mortimer M. Kassell* for respondent. The provisions of article 10-C of the Tax Law imposing a tax upon the estate of the decedent, measured by the

value of the intangible property included in the trust estate, are not in conflict with the State or Federal Constitutions. (*Guaranty Trust Co.* v. *Blodgett,* 287 U. S. 509; *May* v. *Heiner,* 281 U. S. 238; *Commissioner* v. *Northern Trust Co.,* 283 U. S. 782; *Morsman* v. *Commissioner,* 283 U. S. 783; *McCormick* v. *Commissioner,* 283 U. S. 784; *Gibson* v. *Blodgett,* 114 Conn. 207; *Matter of Ellis,* 169 Wash. 581; *Bryant* v. *Hackett,* 118 Conn. 233; *Matter of Frank,* 192 Minn. 151; *Matter of Dillingham,* 196 Cal. 525; *Hackett* v. *Bankers Trust Co.,* 187 Atl. Rep. 653; *Chase Nat. Bank* v. *United States,* 278 U. S. 327; *Saltonstall* v. *Saltonstall,* 276 U. S. 260; *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339; *Bullen* v. *Wisconsin,* 240 U. S. 625; *Blodgett* v. *Silverman,* 277 U. S. 1.)

RIPPEY, J. On December 11, 1931, Katherine H. Brown died within the State of New York, leaving a last will and testament dated and executed December 1, 1931. She left real and personal property within the State of Colorado aggregating $362,447.03, which was administered in the county of Denver. Having property, real and personal, within the State of New York, her will was also probated in New York county. Upon proceedings to establish the inheritance tax due to the State of New York, the Inheritance Tax Appraiser for New York county included an item of $265,767.03, which represented a part of her estate administered within and taxed by the State of Colorado, and recommended a transfer tax thereon under article 10-C of the Tax Law (Cons. Laws, ch. 60) of the State of New York. The tax on this item paid to the State of Colorado was $15,653.82. Upon the report of the Appraiser, the Surrogate of New York county made a *pro forma* order imposing a transfer tax upon the identical property of $13,967.79.

In the notice of appeal to the Surrogate from the *pro forma* order, the executors of the estate objected to the imposition of any such tax by the State of New York on the grounds, among others, that article 10-C of the Tax Law of the State of New York should be so construed and interpreted that no part of and no interest in the securities and other property in question constituted a part of the gross estate of the decedent situated in the State of New York at the time of her death and subject to transfer tax as a part of her estate; that if it were not so interpreted, the applicable provisions of article 10-C of the Tax Law should be declared unconstitutional as in violation of the due process clause of the Constitution of the State of New York and of the due process clause embraced in the Fourteenth Amendment to the Constitution of the United States; and that the tax assessed or attempted to be assessed was erroneous, arbitrary, unjust and illegal and in violation of the rights of the executors under the Constitutions of the State of New York and of the United States as above mentioned. The Surrogate overruled the objections and made a final order assessing the tax. Upon appeal, the Appellate Division of the first department affirmed.

The deceased had been a resident of and domiciled within the State of Colorado for many years. On December 30, 1924, while the deceased was a resident of Denver and domiciled within the State of Colorado she executed and delivered to the Denver National Bank, of Denver, Colorado, as trustee, a trust indenture wherein it was provided that from the income of the securities and property then deposited with the bank and constituting the *res* of the trust the trustee should pay to her daughter Marion K. Brown Elliott, $1,000 on the first day of each and every month during the term of her natural life, provided that in the event the income therefrom should not be sufficient to pay such monthly installment, the

installment should be proportionately reduced, but if the income exceeded the amount required to make such payments the excess should become a part of the trust estate. In the trust deed it was further provided that after the death of said daughter the trustee should pay the income to the children of the daughter then living, share and share alike, until such children or any of them should reach the age of twenty-five years. Upon the arrival of any child at the age of twenty-five years, an equal proportional share of the principal of the trust was required to be paid to such child. If no child or children should survive the daughter, it was provided that the corpus of the trust should revert to and become a part of the settlor's estate to be distributed in accordance with the terms of her will. The trust was created upon certain express conditions. So far as material, the settlor reserved the right at any time upon ten days' written notice to the trustee (1) to change the beneficiary or any of them without the consent of any such beneficiary; (2) to revoke the trust and revest in herself title to the corpus of the trust; (3) upon thirty days' written notice, for herself, if living, and if not living, for her daughter, to remove the trustee or any substitute trustee.

The trust *res* listed in the deed of trust, legal title to which was transferred by the settlor to the trustee by the express terms of the trust instrument, consisted of Federal and Colorado State, municipal, school district, industrial and public service bonds aggregating in value $243,000. The trustee was given the power of substitution of property with the consent of the settlor. The trustee duly accepted the trust, entered upon its administration, and has at all times continued to administer it, both before and after the settlor's death. There was no revocation of the trust or change of beneficiary or trustee or diversion of the income from the use and benefit of the daughter during the lifetime of the settlor

and the beneficiaries were all living at the time of her death.

In an action duly commenced and prosecuted in the courts of Colorado after the death of the settlor to establish the status of the trust and trustee and terminated before proceedings were instituted in New York county before the Inheritance Tax Appraiser, it was found and adjudged that the trust agreement was not revoked by Mrs. Brown in her lifetime, that a valid trust existed and that the executors and trustees, devisees and legatees under her last will and testament had no interest in either the corpus or income of the trust by virtue of the terms of the will except in the event that distribution of the corpus of the trust should be required by the executors because of lack of beneficiaries to whom it could be distributed by the trustee under the terms of the trust indenture.

It is asserted by respondent and has been found by the Surrogate and affirmed by the Appellate Division that Mrs. Brown changed her residence from the State of Colorado to the State of New York and was domiciled within the latter State at the time of her death. This is not contested.

Assuming that domicile in New York State was established, the trust estate is still not taxable within the State of New York, because the trust estate had a fixed *situs* within the State of Colorado. It will again be noted that the trust was created by a resident of the State of Colorado while domiciled therein; that the trust indenture with the corpus of the trust was deposited with the Colorado trustee, whose domicile and residence were in Denver, Colorado; that the trust estate has remained and been administered in Denver, Colorado, since its creation in 1924; that the intent of the settlor was that the trust *res* should be and remain in the State of Colorado

and there be administered both before and after her death; that its location has never changed; that there has been no change in the terms or character of the trust or of the obligations of the trustee since its creation; and that no such change could be made except at the domicile of the trustee. Under what circumstances could intangible property have a more certain and fixed status and location?

It has been settled by the Supreme Court that real property, as between the States, may be taxed only by the jurisdiction where it is located. (*First Nat. Bank* v. *Maine*, 284 U. S. 312; *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194.) It has also been definitely settled that the right of succession to the ownership of tangible personal property arising through death can be taxed only at its permanent *situs*. (*Frick* v. *Pennsylvania*, 268 U. S. 473; *Matter of Swift*, 137 N. Y. 77.) The *location* of both classes of property at the time the right to impose the tax arises is held to be the determining factor. These decisions rest upon the proposition that the property, the ownership or devolution of which is the subject of tax, must be within the jurisdiction of the taxing power. Predicated upon similar facts as to location, there seems to be no reason or logic for arbitrarily applying the ancient maxim *mobilia sequuntur personam* to the devolution of intangibles. That maxim is nothing more than a legal fiction properly applied to prevent injustice and resorted to only when justice and necessity require (*Union Refrigerator Transit Co.* v. *Kentucky, supra*), because, as pointed out in that case (p. 205), intangible property " is held secretly; that there is no method by which its existence or ownership can be ascertained in the state of its *situs*. * * * So," says the court, " if the owner be discovered, there is no way by which he can be reached by process in a State other than

18

that of his domicile, or the collection of the tax otherwise enforced." In cases where the *actual* or *business situs* of intangibles cannot be readily ascertained, as a rule of convenience and necessity the maxim is still applied, but only because the *situs* of the property must be deemed, by necessity, to be that of the domicile of the owner. (*Baldwin* v. *Missouri*, 281 U. S. 586; *Beidler* v. *South Carolina Tax Comm.*, 282 U. S. 1; *First Nat. Bank* v. *Maine*, 284 U. S. 312.)

The principle that *situs* of intangible personalty follows domicile, frequently arbitrarily and strictly applied, has given way to the logical and rational exception that where " the fact is clear that the intangible property has a *situs* elsewhere," the fiction will not be followed. (*New Orleans* v. *Stempel*, 175 U. S. 309; *Bristol* v. *Washington County*, 177 U. S. 133; *State Board of Assessors* v. *Comptoir National d'Escompte*, 191 U. S. 388; *Metropolitan Life Ins. Co.* v. *City of New Orleans*, 205 U. S. 395; *Liverpool & London & Globe Ins. Co.* v. *Orleans Assessors*, 221 U. S. 346; *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83; *Matter of Swift, supra; DeGanay* v. *Lederer*, 250 U. S. 376; *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193; *People ex rel. Whitney* v. *Graves*, 299 U. S. 366; 57 Sup. Ct. Rep. 237. Cf. *Hutchison* v. *Ross*, 262 N. Y. 381.)

Respecting jurisdiction over the thing taxed, there can be no distinction between general property and inheritance taxes. We cannot follow the fiction, as respondent desires, that the inheritance tax is not imposed on the trust property. Theoretically, that may be so. Practically, it is not so. It is, of course, the right to succession that gives the opportunity to tax. But the practical consideration remains that it is the value of the property to which title or interest passes that lays the basis for the tax. Fiction and fancy theories have been

advanced and attempt has been made to engraft them into tax laws to avoid the operation of logical and rational rules applicable to any sanely organized tax system.

In the *Swift Case (supra)* this court said: " When succession to the ownership of property is by the permission of the state, then the permission can relate only to property over which the state has dominion and as to which it grants the privilege or permission. \* \* \* Neither the doctrine of equitable conversion of lands, nor any fiction of *situs* of movables can have any bearing upon the question under advisement. The question of the jurisdiction of the state to tax is one of fact and cannot turn upon theories or fictions; which, as it has been observed, have no place in a well adjusted system of taxation. We can arrive at no other conclusion, in my opinion, than that the tax provided for in this law [referring to Collateral Inheritance Tax Act, Laws of 1885, ch. 483] is only enforceable as to property which, at the time of its owner's death, was within the territorial limits of this state " (p. 86.)

The *Wheeling Steel Corporation Case (supra)* had to do with an *ad valorem* property tax on net income, and the court refers to the general rule of necessity for the application of the maxim *mobilia sequuntur personam* and calls attention to the principle announced in *Farmers Loan & Trust Co.* v. *Minnesota* (280 U. S. 204, 211, 212), that as to intangibles no sufficient reason exists for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. Such principle has had progressive application.

In *Hutchison* v. *Ross* (262 N. Y. 381) this court said: " The maxim ' *mobilia sequuntur personam* ' cannot always be carried to its logical conclusion. Practical considerations often stand in the way. The physical

presence in one jurisdiction is a fact, the maxim is only a juristic formula which cannot destroy the fact " (p. 388).

In the *Whitney Case* (*supra*), the latest pronouncement of the Supreme Court on the subject, the foregoing exception to the rule of necessity is recognized and applied. No case has been called to our attention in any jurisdiction which has not followed the law, where the facts warranted, whether the tax involved is a general property tax or an inheritance tax, as laid down in the case of *Safe Deposit & Trust Co.* v. *Virginia* (*supra*), where it is said: " The general rule must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice, whether through double taxation or otherwise " (p. 92).

The decision in the case of *Guaranty Trust Co.* v. *Blodgett* (287 U. S. 509), upon which respondent so heavily leans, has no bearing upon the question here involved. In that case the settlor retained the income of the trust during life, while here the income was transferred to the beneficiary on the date of the formation of the trust. On the facts in the *Blodgett* case it was held merely that a statute imposing a tax upon the succession to the enjoyment of property was constitutional. The cases of *Bullen* v. *Wisconsin* (240 U. S. 625) and *Blodgett* v. *Silberman* (277 U. S. 1) are clearly distinguishable from the facts in the case at bar. In the former case, in the deed of trust the donor retained the income for life with power of appointment, and provided that no portion of the principal or income be paid over to any person before the donor's death unless by his direction, and in the latter no determination was made as to whether the property had a taxable *situs* in New York State, Connecticut being the State of residence of the deceased. Both cases were substantially held in *Safe Deposit & Trust Co.* v. *Virginia*

(*supra*) to have no bearing where the fact of *situs* in a State other than that of the settlor is established.

It has also been authoritatively held that where the legal title to the *res* is vested in the trustee, jurisdiction to tax is at the domicile of the trustee where the trust is to be administered. (2 Cooley on The Law of Taxation [4th ed.], § 469; 26 R. C. L., Taxation, § 259; *Guthrie* v. *Pittsburgh, C. & St. L. Ry. Co.*, 158 Penn. St. 433; *Thorne* v. *State*, 145 Minn. 412; *Baldwin* v. *Shine*, 84 Ky. 502; *Safe Deposit & Trust Co.* v. *Virginia, supra*.)

Section 249-r of article 10-C of the New York State Tax Law, in force at the time of the settlor's death, provided that " the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated (except real property situated and tangible personal property having an actual situs outside this State): 1. To the extent of the interest therein of the decedent at the time of his death. * * * 3. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferror has retained for his life or any period not ending before his death * * * (b) the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom * * *. 4. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death." It is

clear that it is intended to include within the gross estate of a decedent domiciled within the State of New York at the time of his death intangible property *wherever situate,* without reference to the fact that it may have acquired and had an actual or business *situs* outside of the State of New York. The State has no power to tax property located beyond its jurisdiction. (*Matter of Swift, supra.*) To the extent that it has attempted to do so, it must be held that the statute in question is in violation of the due process provision of the Fourteenth Amendment, and is unconstitutional and void.

The orders should be reversed and the matter remitted to the Surrogate's Court to proceed in the matter of the inheritance tax proceedings in accordance with this opinion, with costs to the appellant in all courts. (See 274 N. Y. 634.)

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.