GRAVES ET AL., COMMISSIONERS CONSTITUTING THE STATE TAX COMMISSION OF NEW YORK, *v.* ELLIOTT ET AL.

No. 372, October Term, 1937. Argued January 9, 1939. Reargued April 28, 1939.—Decided May 29, 1939.

*Mr. Mortimer M. Kassell,* with whom *Mr. Harry T. O'Brien, Jr.* was on the brief, on the reargument and on the original argument, for petitioners.

*Mr. Frederick C. Bangs,* on the reargument and on the original argument, for respondents.

By leave of Court, *Messrs. David T. Wilentz,* Attorney General of New Jersey, *William A. Moore,* Assistant Attorney General, *Paul A. Dever,* Attorney General of Massachusetts, and *Henry F. Long* filed a brief, as *amici curiae,* on behalf of those States, in support of petitioners.

MR. JUSTICE STONE delivered the opinion of the Court.

We are asked to say whether the State of New York may constitutionally tax the relinquishment at death, by a domiciled resident of the state, of a power to revoke a trust of intangibles held by a Colorado trustee.

Decedent in 1924, while a resident of Colorado, transferred and delivered to Denver National Bank of Denver, Colorado, certain bonds to be held upon specified trusts with specified powers in the trustee to administer the trust and to invest and reinvest the trust fund. So far as now material, the trust indenture provided that the trustee should pay over the income to decedent's daughter for life and afterward to the daughter's children until

each had reached the age of twenty-five years, when a proportionate share of the principal of the trust fund was to be paid over to such child. In default of such children the principal was to revert to decedent and pass under her will. She reserved the right to remove the trustee, to change any beneficiary of the trust, and to revoke the trust and revest herself with the title to the property, the trustee in that event undertaking to assign and deliver to her all the securities then constituting the trust fund.

After creating the trust decedent became and remained a domiciled resident of New York, where she died in 1931 without appointing new beneficiaries of the trust or revoking it. Until her death the trust was administered by the bank at its offices in Colorado, and the paper evidences of the intangibles—corporate bonds—comprising the trust fund remained in the possession of the trustee in Colorado.

Following her death the taxing authorities of Colorado assessed a tax on the transmission at death of the trust fund. Proceedings in New York for the assessment of estate taxes on the transfer of the trust fund at decedent's death resulted in an order of the Surrogate confirming the assessment under §§ 249–n, 249–r of the New York Tax Law. Consol. Laws, ch. 60.[1] On appeal the New York

---

[1] § 249–n imposes a tax at specified rates upon the net estate of every person dying a resident of the state. For the purpose of fixing the amount of the net estate, § 249–r includes in the value of the gross estate of the decedent the value of all property of the decedent "except real property situated and tangible personal property having an actual situs outside this state,"

"3. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (a) the possession or enjoyment of, or the income from, the property or

Court of Appeals reversed the order of the Surrogate, holding that so far as the provisions of the New York Tax Law purport to include the intangible trust property in the gross estate they infringe due process by imposing a tax on property whose situs is outside the state. 274 N. Y. 10. We granted certiorari November 14, 1938, the question involved being of public importance.

The essential elements of the question presented here are the same as those considered in *Curry* v. *McCanless, ante,* p. 357. As is there pointed out, the power of disposition of property is the equivalent of ownership. It is a potential source of wealth and its exercise in the case of intangibles is the appropriate subject of taxation at the place of the domicile of the owner of the power. The relinquishment at death, in consequence of the non-exercise in life, of a power to revoke a trust created by a decedent is likewise an appropriate subject of taxation. *Saltonstall* v. *Saltonstall,* 276 U. S. 260; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339; *Helvering* v. *City Bank Farmers Trust Co.,* 296 U. S. 85; cf. *Keeney* v. *New York,* 222 U. S. 525; *Bullen* v. *Wisconsin,* 240 U. S. 625; *Chase National Bank* v. *United States,* 278 U. S. 327; *Tyler* v. *United States,* 281 U. S. 497; *Guaranty Trust Co.* v. *Blodgett,* 287 U. S. 509; *Porter* v. *Commissioner,* 288 U. S. 436.

For reasons stated in our opinion in *Curry* v. *McCanless, supra,* we cannot say that the legal interest of decedent in the intangibles held in trust in Colorado was so

(b) the right to designate the persons who shall possess or enjoy the property or the income therefrom; . . .

"4. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, . . ."

dissociated from her person as to be beyond the taxing jurisdiction of the state of her domicile more than her other rights in intangibles. Her right to revoke the trust and to demand the transmission to her of the intangibles by the trustee and the delivery to her of their physical evidences was a potential source of wealth, having the attributes of property. As in the case of any other intangibles which she possessed, control over her person and estate at the place of her domicile and her duty to contribute to the support of government there afford adequate constitutional basis for imposition of a tax measured by the value of the intangibles transmitted or relinquished by her at death. *Curry* v. *McCanless, supra,* and cases cited.

*Reversed.*

MR. CHIEF JUSTICE HUGHES, dissenting.

I think that the decision in this case pushes the fiction of *mobilia sequuntur personam* to an unwarranted extreme and thus unnecessarily produces an unjust result.

The same property is subjected to an inheritance or transfer tax by two States. The decedent, in 1924, while a resident of Colorado, created a trust in certain securities, consisting of federal, state and other bonds. The trustee was a Denver bank. The income of the trust property was payable to the settlor's daughter during her life and thereafter to her children until they respectively arrived at the age of twenty-five years, when they were to have the principal in equal shares. If the daughter left no children, the trust estate was to revert to the settlor. The settlor reserved the right to change the beneficiaries, to revoke the trust, and to remove the trustee. The legal title to the securities was thus vested in the trustee, which entered upon its administration and continued it both

before and after the settlor's death. There was no revocation of the trust or change of beneficiary or trustee, or diversion of the income from the use of the daughter, and the beneficiaries were all living when the settlor died.

Prior to her death, the settlor removed to New York. The trust *res* continued to be in Colorado. An inheritance tax upon the decedent's property situated in Colorado, and including the bonds held there in trust, was imposed by that State. The New York Court of Appeals has held, and I think rightly, that this trust property was not subject to an estate tax in New York. 274 N. Y. 10.

It is true that the Constitution of the United States contains no specific provision against double taxation, but the Constitution does impose limitations upon the taxing power of a State which I think are applicable and should prevent a double exaction in this case.

The principle governing the application of the due process clause of the Fourteenth Amendment to the State's taxing power is well established. That principle, as repeatedly declared by this Court, and apparently not disputed now, is that it is "essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power." *Union Transit Co.* v. *Kentucky,* 199 U. S. 194, 204. What is meant is that due process in taxation requires that the property shall be attributable to the domain of the State which imposes the tax. This rule has its most familiar illustration in the case of land which, to be taxable, must be within the limits of the taxing State. The fact that the owner is domiciled within a State, if the land is elsewhere, does not give the State of his domicile the authority to tax. In *Union Transit Co.* v. *Kentucky, supra,* we held that the principle against the taxability of land within another jurisdiction applies with equal cogency to tangible personal property having an actual situs outside the State's domain. True, the fiction expressed in the maxim *mobilia*

*sequuntur personam* might have seemed to justify such
a tax on personal property by the State of the owner's
domicile. But as said in *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18, 22: "The old rule, expressed in the
maxim *mobilia. sequuntur personam,* by which personal
property was regarded as subject to the law of the owner's
domicile, grew up in the Middle Ages, when movable property consisted, chiefly of gold and jewels, which could be
easily carried by the owner from place to place, or secreted
in spots known only to himself. In modern times, since
the great increase in amount and variety of personal property, not immediately connected with the person of the
owner, that rule has yielded more and more to the *lex
situs,* the law of the place where the property is kept and
used."

The rule thus established that the State of the owner's
domicile cannot tax tangible personal property which has
an actual situs in another State was applied by this Court
to an inheritance or transfer tax in the case of *Frick* v.
*Pennsylvania,* 268 U. S. 473. There the Court held, without division, that to tax the transfer of tangible personal
property having an actual situs in another State "contravenes the due process clause of the Fourteenth Amendment." The importance of this limitation of state power
is obvious in view of the interrelation of the States under
the bond of the Constitution, and of the opportunities for
oppressive taxation if States attempt to tax property or
transfers of property not properly attributable to their
own domain. "The limits of State power are defined in
view of the relation of the States to each other in the
Federal Union." *Burnet* v. *Brooks,* 288 U. S. 378, 401.

But while the question was thus settled as to tangible
personal property, the fiction of *mobilia sequuntur personam* still persists in a general sense as to intangibles,
embracing securities, thus permitting taxation by the
State of the owner's domicile although the owner may

keep the securities in another State. *Blodgett* v. *Silberman,* 277 U. S. 1, 9, 14, 16. This general rule proceeds in the view that intangibles, as such, are incapable of an actual physical location and that to attribute to them a "situs" is to indulge in a metaphor. Still, in certain circumstances the use of the metaphor is appropriate. *New York ex rel. Whitney* v. *Graves,* 299 U. S. 366, 372.

The fact that this rule of convenience may generally be applied does not justify the conclusion that intangibles can never be so effectively localized in another State as to withdraw them from the taxing power of the domiciliary State. The proper use of a legal fiction is to prevent injustice and it should not be unnecessarily extended so as to work an injury. *Union Transit Co.* v. *Kentucky, supra,* p. 208.

As we said in *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, 92, the fiction of *mobilia sequuntur personam* "must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice, whether through double taxation or otherwise." In that case, a resident of Virginia had transferred certain securities to the Safe Deposit & Trust Company of Baltimore in trust for his minor sons. The donor reserved to himself a power of revocation. He died without having exercised it. Virginia undertook to impose an *ad valorem* tax upon the entire corpus of the trust estate and this Court held that as the securities were subject to taxation in Maryland, where they were in the actual possession of the trustee, the holder of the legal title, they had no legal situs for taxation in Virginia "unless the legal fiction *mobilia sequuntur personam* was [is] applicable and controlling." The Virginia court had held that the two beneficiaries in conjunction with the administrator of the father's estate really owned the trust fund and that by reason of the fiction its taxable situs followed them.

This Court refused to accept that view and denied the right of taxation to Virginia, saying: "It would be unfortunate, perhaps amazing, if a legal fiction originally invented to prevent personalty from escaping just taxation, should compel us to accept the irrational view that the same securities were within two States at the same instant and because of this to uphold a double and oppressive assessment."

That was a case of an *ad valorem* property tax. But the power to impose an inheritance or transfer tax, as well as the power to impose an *ad valorem* property tax, depends upon the property being attributable to the domain of the taxing State. *Frick* v. *Pennsylvania, supra,* p. 492.

In the instant case, the legal title to the property in question is in the Colorado trustee, the trust was created under the Colorado law and its administration is subject to the control of Colorado. To say that these securities are not as effectively localized in Colorado, as were the furniture, pictures and other art treasures of Mr. Frick in New York and Massachusetts, where alone their transfer could be taxed, would be to ignore realities and to make important rights turn upon a verbal distinction.

Upon what ground then is it maintained that these securities are within the taxing power of New York? Solely, it appears, upon the ground that the indenture creating the trust in Colorado reserved to the settlor a power of revocation. This unexercised power is treated as carried by the settlor into New York and hence as bringing in its train the entire corpus of the trust property. That results, as already noted, in giving the fiction an oppressive operation. But, aside from that practical aspect, if through the trust in Colorado the securities have been effectively localized in that State, why should an unexercised power of revocation alter their status? Mr. Frick did not even need to revoke an instrument, for at

any time he could have removed his furniture and art treasures from New York and Massachusetts to his domicile in Pennsylvania. But that obvious control, while unexercised, did not detract from the taxing power of the States where the property was, or permit taxation by the domiciliary State.

It is said that the power of disposition is equivalent to ownership, and that its relinquishment at death is an appropriate subject of taxation. The case of federal taxation is not analogous as there are no state boundaries to be considered when the federal tax is laid. Nor are state cases relevant when there is no attempted extraterritorial application of a state statute, and it is not necessary again to review the authorities cited in the dissenting opinion in *Curry* v. *McCanless, ante,* p. 357. For the present purpose it is sufficient to note that under the principle established in *Frick* v. *Pennsylvania,* it is not enough to say that a power of disposition is equivalent to ownership, for ownership by a resident of a State gives that State no authority to tax property not attributable to its domain. Mr. Frick owned his property in New York and Massachusetts but still his own State of Pennsylvania could not tax its transfer.

The fundamental question is thus not one of a reserved but unexercised power of revocation or of an ultimate control in an owner, but whether securities, classed as intangibles, are necessarily and in all circumstances subject to a different rule from that obtaining in the case of tangible personal property. It is not perceived that there is a sound basis for such an invariable distinction, which is foreign to common thought and practical needs. When confronted with the question as to tangible personal property, we did not hesitate to limit the application of the fiction, and it is regrettable that we can not deal with the fiction in a similar fashion in such a case as this, where

we have an effective localization of securities through a trust created in a State other than that of the settlor's domicile at the time of death, and where in that other State the trustee holds title and possession and has been and is administering the trust subject to its laws.

I think that the judgment of the Court of Appeals of New York should be affirmed.

MR. JUSTICE MCREYNOLDS, MR. JUSTICE BUTLER and MR. JUSTICE ROBERTS concur in this opinion.