[Civ. No. 31724.   Second Dist., Div. Three.   July 25, 1968.]

Estate of ELEANOR DONNELLEY ERDMAN, Deceased. HOUSTON I. FLOURNOY, as State Controller, Petitioner and Respondent, v. CALVIN PARDEE ERDMAN, Individually and as Co-executor, etc., et al., Objectors and Appellants.

Latham & Watkins, Goux & Romasanta, A. R. Kimbrough, J. F. Goux, Antonio R. Romasanta and Joseph A. Wheelock, Jr., for Objectors and Appellants.

Joseph D. Lear, Walter H. Miller, and William L. Baugh for Petitioner and Respondent.

FRAMPTON, J. pro tem.*—Eleanor Donnelley Erdman ("Decedent") died December, 30, 1959, a resident of Santa Barbara County. Her will was admitted to probate in the Superior Court of Santa Barbara County on January 18, 1960, and letters testamentary were issued to her husband, Calvin Pardee Erdman ("Appellant Erdman") and to her son, Calvin Pardee Erdman, Jr., as co-executors.

At her death, decedent held limited testamentary powers of appointment over a portion of the principal of three separate trusts previously created by her parents. The first trust had been created by the will of decedent's mother, who died a resident of Illinois in 1918. A second trust had been created

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

*inter vivos* by decedent's father in Illinois in 1924. The third trust had been established by the will of her father, who died a resident of Illinois in 1929. Under each of the three trusts, decedent was given the income from a portion of the trust assets and a general power of appointment by will over a portion of the principal. On May 7, 1943, decedent executed a partial release of each of her general powers of appointment but expressly reserved limited power to appoint to certain persons, including her husband and her descendants.

Decedent was survived by her husband and four children. On the date of her death, the trust assets subject to her limited powers of appointment had a value of $14,670,711. All of these assets consisted of personal property of the character referred to as "intangible." Legal title to these assets was at all times vested in corporate trustees in Illinois. The trusts have at all times been administered by these corporate trustees in Illinois.

Decedent's will, which had been executed on March 10, 1952, while she was a resident of the City of San Marino, County of Los Angeles, reads in pertinent part as follows:

"*Second*: I give, devise and bequeath all of my estate, of whatever nature and wheresoever situate, to my husband, CALVIN PARDEE ERDMAN, if he shall survive me. . . .

"*Third*: Except as herein provided, I have intentionally, and not by inadvertence or mistake, made no provision for my children, having full confidence that my husband, if he shall inherit my estate, will make adequate provision for them. This declaration is made to preclude any construction of my will to the contrary under the laws of California, and shall not qualify in any manner the absolute character of the gift herein made to him."

After decedent's will was admitted to probate, three separate actions were instituted in the Superior Court of Cook County, Illinois, by the corporate trustees of the three trusts for construction of decedent's last will to determine whether by her will she had exercised her power of appointment over the assets in the respective trusts, and for instructions as to distribution of the trust assets. The California co-executors voluntarily appeared in the Illinois cases, but the State of California was not made a party thereto, and did not appear therein. All three cases were jointly tried.

In his answers to the three complaints in the Illinois actions, decedent's husband, appellant Erdman, contended the California law applied; that, under California law, his

wife's bequest acted to exercise her powers of appointment in his favor and that the trust assets subject to the powers should be distributed to him. Decedent's four children contended that Illinois law applied; that, under Illinois law, the powers of appointment had not been exercised by decedent, and that the trust assets subject to the powers should be distributed two-thirds to them and one-third to their father, appellant Erdman, in accordance with the trust provisions governing distribution in the absence of appointment.

On July 18, 1960, the Illinois court entered a decree in each of the actions wherein it held that the law of Illinois was the proper law to apply in determining whether the powers of appointment had been exercised by decedent, and that decedent did not intend to, and by her will did not, exercise the power to appoint. Accordingly, the Illinois court instructed the corporate trustees to distribute the trust assets, which were subject to decedent's powers of appointment under the trust provisions governing distribution in the absence of appointment, one-third to appellant Erdman and two-thirds to the children. Each of the three decrees entered in the Illinois actions became final and is binding on all parties who appeared therein.

The Report of Inheritance Tax Appraiser, dated March 11, 1964, was filed in the estate proceedings on May 5, 1965. The appraiser found that the above quoted bequest in decedent's will constituted an exercise of her powers of appointment and that such exercise was subject to inheritance tax under former section 13693 of the Revenue and Taxation Code.[1] The report treated the sum of $14,670,711 as a transfer to decedent's husband, appellant Erdman, and assessed an inheritance tax of $724,131.

The co-executor and appellant Erdman, acting in his individual capacity (hereinafter referred to collectively as "Appellants"), filed timely objections to the Report of Inheritance Tax Appraiser on the ground that decedent's bequest to her husband did not constitute an exercise of her powers of appointment. The matter was heard on a partial

[1]Revenue and Taxation Code, section 13693: "Where a general or limited power of appointment given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date, is exercised after that date by the donee, the exercise of the power is a transfer subject to this part from the donee to the person appointed at the time of the exercise, as though the property to which the power relates belonged absolutely to the donee and is transferred by him by will." (Repealed by Stats. 1965, ch. 1070, § 5.)

written stipulation of facts, decedent's will, the initial and supplementary inventory and appraisement, the Report of Inheritance Tax Appraiser, the claims filed in the estate, and certain oral stipulations entered into at the hearing. Appellants also offered in evidence a letter written by decedent, dated March 8, 1952.[2] which was subsequent to the drafting of the will and two days prior to its execution, to demonstrate that at the time decedent executed her will, she believed that she had wholly released her powers of appointment in 1943, and thus, believed and stated in the letter that she was not able to dispose of the trust assets by her will. The respondent objected to the admission of the letter on the ground that extrinsic evidence was not admissible for the purpose of determining whether or not decedent exercised her powers of appointment and that declarations of the testatrix were not permissible forms of extrinsic evidence. The appellants offered to prove the authenticity of the letter, and stated that it was offered to show the state of mind of decedent at the time she executed her will, that it was admissible to show the facts and circumstances surrounding the testatrix when she executed her will, including (1) her belief that she had given up her powers of appointment and could not exercise them, and (2) that her children were going to get their portions of the trusts. The objection to the letter was sustained.

On May 31, 1966, the trial court rendered its memorandum of decision wherein it held that respondent was not bound by the Illinois decrees and that the California Legislature had intended section 125 of the Probate Code[3] to define what constituted the "exercise" of a power of appointment for the purpose of former section 13693 of the Revenue and Taxation Code. Applying section 125 of the Probate Code, the trial court concluded that the above quoted testamentary bequest to decedent's husband constituted an "exercise" of her powers of appointment in his favor for the purpose of section 13693 of the Revenue and Taxation Code, and that an inheritance

---

[2]The letter reads in pertinent part as follows:

"Dearest Pard: I am writing this . . . for further taxes.

"Had I been able to will the money from these Trusts without having to give up in taxes such a large amount of principal, I would have arranged that at least 50% of it be put in Trust for each of you, giving each of you the sole management of the Trust . . . ."

[3]This section reads: "A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, including property embraced in a power to devise."

tax in the amount fixed by the appraiser was payable. Findings of fact and conclusions of law were filed. An order overruling the objection to Report of Inheritance Tax Appraiser and fixing inheritance tax was entered on July 6, 1966. The appeal is from this order.[4]

In appellants' reply brief they state that the parties are in agreement that the principal issue may be stated as follows: "For California inheritance tax purposes, did Decedent's last will, in which she devised and bequeathed all of her property to her surviving husband, Appellant Erdman, constitute the exercise of the limited powers of appointment which she held at the time of her death?" They also say that although the principal issue in the case may be thus stated, the issue may be summarized more precisely in the following question: "Should former Revenue and Taxation Code § 13693 be construed to mean that, for inheritance tax purposes, the language of Decedent's will constituted the exercise of her powers of appointment in favor of Appellant Erdman and, thus, effect a 'transfer' of the property subject to these powers to Appellant Erdman, even though Appellant Erdman at no time had any legal right to receive such property as Decedent's appointee and never received it? If the statute should be so construed, is it constitutional and may it be constitutionally applied to Appellant Erdman?"

Section 13304 of the Revenue and Taxation Code provides that: " 'Transfer' includes the passage of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise." Section 13401 thereof provides: "An inheritance tax is hereby imposed upon every transfer subject to this part." Sections 14321 and 14322 thereof provide in substance that the collection of any tax found to be due may be enforced by writ of execution against any property belonging to the transferee. Thus, if the provisions of decedent's will are held to be a transfer taxable under California law, the appellant Erdman will be taxed upon the exercise of a power of appointment which did not result in the transfer of any tangible or intangible assets to him from the estate of his deceased wife.

The Illinois court had jurisdiction over the trust corpus, the trustee and the heirs of the decedent who were served with process, or who voluntarily appeared therein. (See *Estate of Johnson,* 233 Cal.App.2d 785, 791 [43 Cal.Rptr. 913]; *Schuster* v. *Superior Court,* 98 Cal.App. 619 [277 P.

---

[4]See section 1240 of the Probate Code.

509]; Rest., Conflict of Laws, § 298.) The judgment of such court, therefore, is binding upon the appellant as to the disposition of the assets of the three trusts which were subject to the decedent's powers of appointment.

■ A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, including property embraced in a power to devise. (Prob. Code, § 125; *Estate of Carter*, 47 Cal.2d 200, 204 [302 P.2d 301].) The exercise of a power of appointment over out-of-state personal property in the will of the donee who died a resident of the State of California was taxable under the provisions of former section 13693 of the Revenue and Taxation Code. (*Estate of Newton*, 35 Cal.2d 830 [221 P.2d 952, 19 A.L.R.2d 1399].)

■ "[T]he power of disposition of property is the equivalent of ownership. It is a potential source of wealth and its exercise in the case of intangibles is the appropriate subject of taxation at the place of the domicile of the owner of the power. . . . As in the case of any other intangibles which she possessed, control over her person and estate at the place of her domicile and her duty to contribute to the support of government there afford adequate constitutional basis for imposition of a tax measured by the value of the intangibles transmitted or relinquished by her at death." (*Graves* v. *Elliott*, 307 U.S. 383 [83 L.Ed. 1356, 1360, 59 S.Ct. 913]; see also *Curry* v. *McCanless*, 307 U.S. 357 [83 L.Ed. 1339, 59 S.Ct. 900, 123 A.L.R. 162].) The tax is not upon the assets subject to the power of appointment. (*Estate of Baird*, 135 Cal.App.2d 333, 340 [287 P.2d 365].)

"Decedent's complete and exclusive power to dispose of the intangibles at death was property in his hands in New York, where he was domiciled. *Graves* v. *Elliott*, 307 U.S. 383 [83 L.Ed. 1356, 59 S.Ct. 913], *supra*. He there made effective use of the power to bestow his bounty on the widow. Its exercise by his will to make a gift was as much an enjoyment of a property right as would have been a like bequest to his widow from his securities. See *Helvering* v. *Horst*, 311 U.S. 112, 117 [85 L.Ed. 75, 78, 61 S.Ct. 144, 131 A.L.R. 655]. For such enjoyment of property rights, through resort to New York law, decedent was under the highest obligation to contribute to the support of the government whose protection he enjoyed in common with other residents. Taxation of such enjoyment

of the power to dispose of property is as much within the constitutional power of the state of his domicile as is the taxation of the transfer at death of intangibles which he owns.

"Since it is the exercise of the power to dispose of the intangibles which is the taxable event, the mere fact that the power was acquired as a donation from another is without significance. We can perceive no ground for saying that its exercise by the donee is for that reason any the less the enjoyment of a property right, or any the less subject to taxation at his domicile. The source of the power by gift no more takes its exercise by the donee out of the taxing power than the like disposition of a chose in action or a share of stock, ownership of which is acquired by gift.

"But respondents argue that because here the power was bequeathed by a Massachusetts will, which placed the intangibles subject to the power in a Massachusetts trust, there was nothing within the jurisdiction or control of New York which could be deemed subject to its taxing power. If by this is meant that the power was ineffective because its exercise by the New York will did not conform to the requirements of the will creating the power and defining the manner of its exercise, or to the laws of Massachusetts governing the disposition of intangibles, no such question is before us. We must take it that the New York courts assumed, as we do, that the power had been so exercised by the New York will as to confer on the widow the right to demand the property of the trustees in Massachusetts, and that even upon that assumption they held that the exercise of the power in New York could not constitutionally be taxed.

"Whether the New York tax statute would apply if the New York will were ineffective to transfer the intangibles because it failed to comply with the requirements of the Massachusetts will or statutes, is for the New York courts to decide. Whether in such a case the statute could be constitutionally so applied is a question not presented by the record. But if, as is assumed, the power has been effectively exercised, the New York will is the implement of its exercise, made effective as a will by New York law whose aid the decedent invoked for the exercise and enjoyment of the property right conferred on him by the Massachusetts will. Its exercise is a subject over which the sovereign power of taxation extends.

"Admittedly, under prevailing notions of choice of law in the courts of these two states, the law of the donor's domicile,

here Massachusetts, may be looked to in New York in determining whether, in some respects at least, there has been a valid and effective execution of the power of appointment. *Sewall* v. *Wilmer,* 132 Mass. 131; *Hogarth-Swann* v. *Weed,* 274 Mass. 125, 130 [174 N.E. 314]; *Hillen* v. *Iselin,* 144 N.Y. 365, 378 [39 N.E. 368]; *Re New York L. Ins. & T. Co.* 209 N.Y. 585 [103 N.E. 315]. But a transfer which has in fact been effected by recourse in part to the law of New York is not free of taxation there because the power might have been exercised elsewhere or by some other mode, or because it may be necessary for the transferee to invoke the laws of Massachusetts in order to acquire control of the property. A transfer in one state of a chose in action or a share of stock may be taxed there even though the transferee in order to enjoy its benefits must depend in part upon the law of the state of the debtor or of the corporation. *Blodgett* v. *Silberman,* 277 U.S. 1, 10-17 [73 L.Ed. 749, 757-760, 48 S.Ct. 410]. Here the relationship of the power to Massachusetts does not leave New York without sufficient control over the donee and his exercise of the power to support its constitutional authority to tax. For the fact remains that he, as a resident, enjoying the protection of New York's laws and owing to it the duty of financial support, has disposed of wealth by a will executed and probated in New York with the same result as if he had owned the property. This transmission of wealth at death by a resident is not a forbidden source of revenue to the state." (*Graves* v. *Schmidlapp,* 315 U.S. 657 [86 L.Ed. 1097, 1101-1103, 62 S.Ct. 870, 141 A.L.R. 948].)

Taxing entities are bound by judgments of courts of competent jurisdiction rendered in proceedings *in rem* even though such authorities are not parties to such proceedings. (See *Estate of Barter,* 30 Cal.2d 549 [184 P.2d 305]; *Estate of Radovich,* 48 Cal.2d 116, 121 [308 P.2d 14]; *Estate of Clarke,* 66 Cal.2d 142, 146 [56 Cal.Rptr. 897, 424 P.2d 337].) Appellants state in their brief that the proceedings in the three Illinois cases were actions *in personam.*

In *Graves* v. *Schmidlapp, supra,* the Supreme Court of the United States declined to pass on the question whether the state of domicile of the donee of the power (New York) could lawfully tax the exercise of the power where the exercise of the power was ineffective and did not conform to the requirements of the will creating the power and defining the manner of its exercise or the laws of the state governing the disposition of the intangibles (Massachusetts). It was

assumed in *"Graves"* that the power had been so exercised by the New York will as to confer on the appointee the right to demand the property in the hands of the trustees in Massachusetts. The court went on to say further that under prevailing notions of choice of law in the courts of the two states, the law of the donor's domicile (Massachusetts) may be looked to by the courts of the donee's domicile (New York) "in determining whether, in some respects at least, there has been a valid and effective execution of the power of appointment." (*Graves* v. *Schmidlapp, supra,* 80 L.Ed. p. 1102.)

It has been held that the property passes to and vests in the beneficiaries at the instant of death, and the fact that the beneficiaries ultimately do not receive the benefit of the property by reason of its having been embezzled during the course of administration does not defeat the right of the state to impose an inheritance tax predicated upon conditions which existed at the time of death. (*Estate of Hite,* 159 Cal. 392 [113 P. 1072, Ann.Cas. 1912C 1014, 32 L.R.A. N.S. 1167].)

The judgment of the California court here has adjudicated the same transaction that was adjudicated by the Illinois court. The California court, which had jurisdiction of the probate proceedings in the estate of the donee of the power of appointment, has determined that such power was effective and has approved the assessment of an inheritance tax based upon the value of the intangibles which, if the exercise of the power was effective, the appointee would have the right to demand of the trustees domiciled in Illinois. The Illinois court which had jurisdiction of the trust *res* and the trustees has determined that the exercise of the power under Illinois law was ineffective to transfer the assets held in trust in that state, and that such assets should be distributed in accordance with the will of the donor of the power, one-third to appellant Erdman and two-thirds to the surviving children of the donee of the power. There was no question raised in the trial court that the Illinois actions were collusive in nature and were brought for the purpose of evading the California inheritance tax (see *Estate of Clarke,* 66 Cal.2d 142, 147 [56 Cal.Rptr. 897. 424 P.2d 337]), and there is nothing in the record before us from which we can conclude that such actions were other than adversary. The Illinois actions were commenced by the respective corporate trustees charged with the administration of the respective trusts. The appellant Erdman took the position in the Illinois actions that the power of appointment had been effectively exercised by the donee of the power under the

terms of her will. The Illinois court found against him, and by its judgment, in effect, decreed that appellant Erdman had no right, title or interest in the assets of the trusts other than an undivided one-third interest therein.

It is said that "Like other creditors, neither the State nor the national government has a property interest in the property of its citizens merely because it has a claim against them for taxes. Like other third persons, in the absence of fraud, the State is bound by a judgment against a taxpayer with reference to the ownership of property. Thus, if in the administration of an estate or in a proceeding to reform a deed, it is found that the will or the deed created an estate for life or that there is a constructive trust in the property because the deed was obtained by fraud, the claim of the government for taxes, as far as the claim is dependent upon the existence of a property interest of the taxpayer, is destroyed by the judgment, the effect of which is to deprive the taxpayer of his supposed property, at least from the time when the judgment was rendered. If it is found that the taxpayer never owned the property, it is proper that he should not be taxed either for it or for income from it. On the other hand, if such taxpayer has colluded with others to obtain an adverse judgment or has used the machinery of the courts in order to deprive himself of the apparent ownership of property during a period for which he should be taxed, the government is being defrauded in the same way as would be other creditors and has a right collaterally to attack the judgment as a fraud upon its interests. In situations in which the temptation to collusion is great and specific evidence of a collusive agreement difficult to obtain, slight evidence, such as the fact that the trial was not seriously conducted, may be a sufficient basis for a collateral attack." (Rest., Judgments, § 91, com. d.)

While the imposition of the tax here is not on the intangibles which constitute the trust funds in the State of Illinois, such tax is levied on the basis of the value of such intangibles and on the assumption that the power of appointment had been exercised in such manner as to give the appointee of the donee the right to demand the intangibles of the trustees in the State of Illinois. The Illinois judgment has determined that the appointee of the donee never had the right under the terms of the donee's will to demand title to the intangibles, and thus, the power of appointment was ineffectually exercised.

It has been held in many jurisdictions that the law of the

346

domicile of the donor of the power of appointment controls as to whether the power has been effectively exercised, and not the law of the domicile of the donee. (*Estate of Sloan*, 7 Cal.App.2d 319, 333 et seq. [46 P.2d 1007]; *Lane* v. *Lane*, 20 Del. 368, 378 [55 A. 184, 187, 103 Am.St.Rep. 122, 64 L.R.A. 849]; *Wilmington Trust Co.* v. *Wilmington Trust Co.*, 21 Del. Ch. 188, 195 [186 A. 903, 907]; *Boston Safe Deposit & Trust Co.* v. *Painter*, 322 Mass. 362, 363 [77 N.E.2d 409]; *Farnum* v. *Pennsylvania Co.*, 87 N.J.Eq. 108, 111 [99 A. 145, 146-147]; *In re Kelly's Will*, 174 Misc. 80, 81 [20 N.Y.S.2d 6, 8]; *In re Campbell's Estate*, 138 Misc. 800 [248 N.Y.S. 344]; *Adams* v. *D'Hauteville*, 72 R.I. 325, 328 [51 A.2d 92, 94]; *Rhode Island Hospital Trust Co.* v. *Dunnell*, 34 R.I. 394, 403-405 [83 A. 858, 861-862, Ann.Cas. 1914D 580]; *Old Colony Trust Co.* v. *Commissioner* (1st Cir. 1934) 73 F.2d 970; *Bussing* v. *Hough*, 237 Iowa 194, 199-202 [21 N.W.2d 587. 590-591]; *Sewall* v. *Wilmer*, 132 Mass. 131; *In re New York Life Ins. & Trust Co.*, 209 N.Y. 585 [103 N.E. 315, 316]; *Hollister* v. *Hollister*, 85 Ore. 316 [166 P. 940]; see also 6 Page on Wills, Brown-Parker Rev., § 60.19.)  ▮ "If a power to appoint movables by will is created by a will, the question whether it is exercised by a general bequest not specifically mentioning the power is determined by the law of the domicil of the donor of the power at the time of his death." (Rest., Conflict of Laws, § 288.)

It has been suggested that section 125 of the Probate Code constitutes a "trap" for the unwary. (*Powers of Appointment*, 19 Hastings L.J. p. 1291.)

▮ We are of the opinion that to construe section 125 of the Probate Code, and former section 13693 of the Revenue and Taxation Code in such manner as to sustain the right of California to tax the exercise of the power of appointment where, as here, such power has been held to have been ineffective to transfer anything of value to the appointee of the donee of the power, would authorize the taking of property without due process of law in violation of Amendment Fourteen, section 1 of the Constitution of the United States. (See *Hoeper* v. *Tax Com.*, 284 U.S. 206 [76 L.Ed. 248, 251, 52 S.Ct. 120, 78 A.L.R. 346].) We are further of the opinion that, in the circumstances here shown, California should recognize and respect the judgment of the Illinois court as a valid determination that the power of appointment was ineffective to transmit title to the intangibles situated in Illinois. (U. S. Const., art. IV, § 1.) To sustain the tax would be

to permit the levy and collection thereof based solely upon empty words contained in the will of the donee of the power. In view of the conclusion herein reached, we deem it unnecessary to pass upon the admissibility in evidence of the letter written by the testatrix contemporaneously with her will.

The order fixing inheritance tax is reversed with directions to the trial court to enter its order sustaining the objections to the Report of the Inheritance Tax Appraiser.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied August 13, 1968, and respondent's petition for a hearing by the Supreme Court was denied September 18, 1968.